Schnabel, Appellant, *v.* Meredith.

610

Argued June 1, 1954. Before STERN, C. J., JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*J. L. Cohen,* with him *Mitchell W. Miller, Levi, Mandel & Miller* and *Edwin S. Conro,* for appellant.

*William S. Bailey,* with him *Claire G. Biehn,* for appellee.

OPINION BY MR. JUSTICE JONES, September 27, 1954:

This appeal is from a judgment of compulsory nonsuit in a trespass action for damages for the defendant's alleged libel of the plaintiff and the invasion of his privacy. At the conclusion of the plaintiff's evidence, the defendant moved for a compulsory nonsuit which the trial judge granted and which the court en banc later refused to take off. Judgment was accordingly entered, and the plaintiff appealed. The pertinent facts are not in dispute.

The defendant, Meredith, is the owner and publisher of the Quakertown Free Press, a weekly newspaper of general circulation in Quakertown, Bucks County, Pa. On January 24, 1952, there appeared on the front page of the newspaper the following article:

"F. B. I. LAUNCHES SLOT MACHINES' INVESTIGATION

No Evidence in Bucks County of Law Infractions—
Raids are Conducted in Montgomery

GAMBLERS ARE FEUDING

"Despite heavy activity by local and State Police and FBI agents against slot machine activities in counties surrounding Bucks, District Attorney Willard S. Curtin reported yesterday that his office has no evidence of gambling in the county in the last six months' period.

"The last round-up of gamblers in Bucks county occurred exactly six months ago Sunday when 69 men were arrested on August 20 of last year after a State Police raid on what was described as the largest floating dice game in the history of the county.

"*It has been an even longer time since slot machines have been uncovered in the county. It was August 10 of last year to be exact that State Police seized seven slot machines after a raid on the estate of Carl Schnabel in West Rockhill.*

"Asked if this clean slate for six months means that Bucks county now has no gambling, Curtin replied yesterday, 'At least none that we have been informed of' " (Emphasis supplied). The article then went on to report the results of like investigations in adjacent areas. It is the publication of the above-quoted paragraph which we have italicized that Schnabel, the plaintiff, claimed libeled him and invaded his privacy.

Libel is the malicious publication of printed or written matter which tends to blacken a person's reputation and expose him to public hatred, contempt or ridicule: 33 Am. Jur., Libel and Slander, §3. See *Collins v. Dispatch Publishing Co.*, 152 Pa. 187, 189-190, 25 A. 546. However, truth of the matter, when pleaded and proven to the satisfaction of the jury, constitutes a defense. Section 2 of the Act of April 11, 1901, P. L. 74, 12 PS §1582, provides that "In all civil actions for libel, the plea of justification shall be accepted as an adequate and complete defense, when it is pleaded, and proved to the satisfaction of the jury, under the direction of the court as in other cases, that the publication is substantially true and is proper for public information or investigation, and has not been maliciously or negligently made." In the Restatement, Torts, §582, it is said that "The truth of a defamatory statement of fact is a complete defense to an action for defamation." See *Kilian v. Doubleday & Co., Inc.*, 367 Pa. 117, 123, 79 A. 2d 657. In the instant case the defense was the truth of the published facts.

On August 10, 1951, the State Police had seized seven slot machines on Schnabel's property. He was indicted, tried and *acquitted* of having set up and maintained gambling devices in violation of Section 605 of The Penal Code of 1939, P. L. 872, 18 PS §4605. At the trial of the present action, Schnabel freely admitted these facts and the trial court, in view of "these

admissions, and being convinced that plaintiff had not made out a case of invasion of privacy", entered the compulsory nonsuit at the close of the plaintiff's case as already stated. It is the refusal of the court en banc to take off the nonsuit which Schnabel assigns here for error.

The opinion of the learned court below, written by the trial judge, aptly summarized the plaintiff's contentions with respect to the allegations of libel and adequately and correctly disposed of them as follows:

"Plaintiff apparently concedes [that truth is a defense to an action for defamation], but contends that it has no application, urging the Court to rule that the quoted reference to the plaintiff was not the whole truth in that it did not also refer to the acquittal of plaintiff in the criminal proceedings, and further that it should be a jury question as to whether or not, in the context of the whole article, there could be justifiably found a false imputation that plaintiff was a gambler or operated a gambling establishment.

"There is no merit to these contentions. The item does not charge plaintiff with setting up and maintaining gambling devices at which money was played for, (see Section 605 of The Penal Code of June 24, 1939, P. L. 872, 18 P.S. 4605), which is the offense for which plaintiff was indicted and acquitted, and therefore the failure to mention such acquittal does not detract in any way from the truthfulness of the story. Nor are we convinced that even by innuendo was plaintiff accused of any gambling activity other than that which might have been charged against him merely from the admitted fact of possession of slot machines under Section 603 of the Penal Code (18 P.S. 4603): *Commonwealth v. Cancillieri*, 166 Pa. Superior Ct. 1. The acquittal of plaintiff under Section 605, possibly

because of lack of proof of actual play on the machines for money, in no way derogates against the truth of a totally separate charge which might have been brought against him under Section 603. Under the Cancillieri case, he could have been found guilty of violation of the latter section merely on proof of possession of the machines alone, the intent to use them for gambling purposes being inferred from the inherent nature thereof.

"Innuendo cannot be used to enlarge the natural meaning of the words used. The quoted portion of the article referring to plaintiff, even considered in the context of the whole story concerning slot machines, could not have the effect of imputing anything to plaintiff except that which was admittedly true. The trial judge properly determined that question and, therefore, since the article fairly and reasonably could not be construed to have the meaning imputed by plaintiff, the case should not have gone to the jury: *Sarkees v. Warner-West Corporation*, 349 Pa. 365-368."

The appellant's alternative contention is that the reference to the seizure of slot machines on his property some six months prior to the publication of the assailed newspaper item constituted an unwarranted invasion of his right of privacy. Although the plaintiff cites no decision of either of our appellate courts which recognizes the existence in Pennsylvania of the right of privacy, he asserts that such a right does exist on the basis of a concurring opinion by the late Chief Justice MAXEY in *Waring v. WDAS Broadcasting Station, Inc.*, 327 Pa. 433, 194 A. 631, and the decisions in *Leverton v. Curtis Pub. Co.*, 192 F. 2d 974 (C.A. 3); *Clayman v. Bernstein*, 38 D. & C. 543; and *Harlow v. Buno Co., Inc.*, 36 D. & C. 101. Assuming, without deciding, that such a right does exist in Pennsylvania, the appellant has not brought himself within the op-

eration of the rules governing the right of privacy where such right has been judicially recognized.

The appellant would hardly assert that, at the time the slot machines were found on his property, it was an unreasonable interference with his privacy to disclose that fact to the various news-dispersing media. It is beyond question that, at the time, his activities were a legitimate matter for public inquiry—and that is so whether the appellant came willingly or unwillingly into public notice. Nor is the mere lapse of time between the date of the seizure of the slot machines on the appellant's property and the date of the republication of that fact determinative, per se, of the question whether the appellant had so far "reverted to the lawful and unexciting life led by the great bulk of the community" as not to be any longer a proper subject of public interest. The result in each case depends upon a balancing of the conflicting interests,— the interest of a person not to have his privacy invaded, on the one hand, and, on the other, the legitimate interest of the public to be informed.

In the present instance, the defendant publisher printed a newspaper story which described police efforts to eradicate gambling activities in counties adjacent to Bucks and, in the course of the article, made reference to the fact that it had been six months since slot machines had been exposed in Bucks County when they had been found on the appellant's property. The newspaper story was comparing conditions in the various counties and, therefore, legitimately referred to the conditions in Bucks County. By his possession of the slot machines, the appellant relinquished his asserted right to be let alone; and, the passage of the six-month interval did not wipe away the notoriety occasioned by his possession of the machines. In *Sidis v. F-R Pub. Corporation,* 113 F. 2d 806 (C.A. 2), for example,

616

recovery was denied where a famed child prodigy was the subject of a biographical sketch in a national magazine many years after he had purposely sought anonymity. Cf. also *Leverton v. Curtis Pub. Co.,* supra, at p. 977. The present appellant's privacy was not invaded. Moreover, as noted in Comment d, §867, Restatement, Torts, ". . . liability exists only if the defendant's conduct was such that he should have realized that it would be offensive to persons of ordinary sensibilities. It is only where the intrusion has gone beyond the limits of decency that liability accrues. These limits are exceeded where intimate details of the life of one who has never manifested a desire to have publicity are exposed to the public, or where photographs of a person in an embarrassing pose are surreptitiously taken and published." In publishing a fact already known to the public, and which had obvious relevance to the printed story at hand, the defendant publisher cannot be said to have exceeded the limits of decency.

Judgment affirmed.