William JENKINS, Susann Jenkins, Katheryn Jenkins, Sarah Jenkins, David Jenkins, and Faye Jenkins, By Agnes Jenkins, their natural Guardian, and Agnes Jenkins,

v.

DELL PUBLISHING COMPANY, Incorporated, a New York Corporation.

Civ. A. No. 12944.

United States District Court
W. D. Pennsylvania.

Aug. 9, 1956.

---

7. But see II Wigmore on Evidence (3d ed.) § 280(2).

See also 132 F.Supp. 556.

William C. Smith, Jr., of Smith, Weaver, Richardson & Smith, Pittsburgh, Pa., for plaintiffs.

Charles C. Arensberg, of Patterson, Crawford, Arensberg & Dunn, Pittsburgh, Pa., for defendant.

MARSH, District Judge.

Defendant renews its motion to dismiss the complaint for lack of jurisdiction over the defendant and cites Motch & Merryweather Machinery Company v. School District of Pittsburgh, 1955, 381 Pa. 619, 116 A.2d 733. We think that case is clearly distinguishable and hence of little aid. It does not involve, nor does the court in its opinion even mention, the Act of 1951, September 26, P.L.1475, § 22, 15 Purdon's Pa.Stat.Ann. § 2852–1011, subdivs. B and C. As we pointed out in a prior opinion, there is great danger in extending a decision of what constitutes doing business in a tax case to the question of jurisdiction under the aforesaid statute. Jenkins v. Dell Publishing Co., D.C.W.D.Pa.1955, 130 F.

Supp. 104. The renewed motion to dismiss will be refused.

Defendant also filed a motion for summary judgment alleging that there is no genuine issue as to any material fact. We think that this motion should be granted.

From the pleadings, depositions and affidavits submitted, the following facts appear to be undisputed. Agnes Jenkins is the widow of David Jenkins, deceased, and that William, Susann, Katheryn, Sarah, David Jr., and Faye are their minor children. David Jenkins was kicked to death on September 23, 1953 by the leader of a gang of teen-age thugs. The matter resulted in considerable notoriety, during the course of which representatives of the Pittsburgh Post-Gazette and the Pittsburgh Press requested permission of the widow to take family pictures. The widow knew that the photographers were from newspapers which desired the pictures for publication, and two of the children, William and Susann, consented to having their pictures taken at that time for that purpose. The pictures appeared in the Pittsburgh Press on September 28, 1953 (defendant's Exhibit No. 3) and in the Pittsburgh Post-Gazette at approximately the same time. These papers have a combined circulation of approximately 550,000.

The Pittsburgh Post-Gazette, being a member of the Associated Press, has an arrangement whereby it shares its news items and photographs with other newspapers through transmittal to a central agency. Pursuant thereto, it sent its picture of the Jenkins family (defendant's Exhibit No. 2) to World Wide Photos, Inc., which, in turn, made them available to the defendant. The defendant published this picture in its January, 1954, issue of its magazine, Front Page Detective, in a story entitled "Heartbreak House" (defendant's Exhibit No. 1). Plaintiffs did not consent to this republication.

We assume, as plaintiffs contend, that the magazine Front Page Detective is published principally for entertainment purposes and is not primarily intended to inform the reading public. As its name would indicate, it is devoted primarily to crime stories. The January, 1954, issue contains "13 full length stories", dealing principally with homicides of one kind or another, and "4 picture stories" of which "Heartbreak House" is one.

This picture story is contained on a single page. In addition to the picture of the Jenkins' family, there are pictures of Mr. Jenkins, his assailants, a detective and another victim of the gang. Adjacent to each picture are the true names of each person therein. In less than 150 words a strictly factual account of the attack by the gang on Mr. Jenkins and the other victim appears. The individual plaintiffs are not mentioned by name or as a family in this account. There is no averment that the account is untrue, unreasonable, humiliating, embellished, distorted, dramatized or fictionized; nonetheless, plaintiffs allege that the publication of their picture caused them mental distress, embarrassment and damage.

The defendant contends that while the general purpose of the magazine was to entertain, this particular item was news principally intended to inform the public. Plaintiffs contend that this particular article was published primarily for entertainment purposes as was the rest of the magazine.

■■ Since Pennsylvania is the place of the wrong, it is Pennsylvania law that determines whether any right of the plaintiffs has been invaded. Leverton v. Curtis Pub. Co., 3 Cir., 1951, 192 F.2d 974; Restatement, Conflict of Laws §§ 377–378. Although the Pennsylvania Supreme Court expressly did not decide the point,[1] it has become increasingly evident that there exists in Pennsylvania a cause of action to protect the right of privacy. See the Uniform Single Publi-

---

1. Schnabel v. Meredith, 1954, 378 Pa. 609, 107 A.2d 860.

cation Act, Act of 1953, August 21, P.L. 1242, Pa.Stat.Ann. Tit. 12, § 2090.1 et seq.; see also footnote 2 in the Leverton case.

■ The right of privacy is the right to be let alone. In formulating rules of liability, however, this right, in certain circumstances, is "overbalanced by the general public interest in being kept informed". Leverton v. Curtis Pub. Co., supra, 192 F.2d at page 976. Of course, the freedom to publish news is subject to certain limitations. Restatement, Torts § 867, comment (d).

■ This record does not disclose that defendant has exceeded its privilege in publishing the news of the killing of Mr. Jenkins. It did not unreasonably or seriously interfere with plaintiffs' interest in not having the family picture exhibited to the public. Consequently the case should not be submitted to a jury.

Had the picture accompanied a false, fictionized or dramatized account of the event or of the family or any member thereof, summary judgment should be refused. See: Hazlitt v. Fawcett Publications, Inc., D.C.Conn.1953, 116 F. Supp. 538; Garner v. Triangle Publications, Inc., D.C.S.D.N.Y.1951, 97 F.Supp. 546; Mau v. Rio Grande Oil, D.C.S.D. Cal.1939, 28 F.Supp. 845. But as indicated in the cited cases, when plaintiffs do not assert that the event has been falsely, unfairly or unreasonably reported and "picture story" appears on its face to be confined to an "unembroidered dissemination of facts", summary judgment should be granted. See also, Samuel v. Curtis Pub. Co., D.C.N.D.Cal.1954, 122 F.Supp. 327, where summary judgment was entered when it appeared as it does here that there is nothing uncomplimentary or discreditable to plaintiffs in the picture itself nor does the caption and accompanying article add anything to make it uncomplimentary or discreditable.

■ In addition to being newsworthy, the plaintiffs, through the widow, agreed that the pictures of the family should be a part of the news; they consented to become actors in an occurrence of public interest; they voluntarily attached themselves pictorially to this news item. It is true that plaintiffs did not consent to republication of this particular family picture by defendant three months later, but the privilege to publish pictures in connection with news is not lost after this lapse of time. Leverton v. Curtis Publishing Co., supra; Estill v. Hearst Publishing Co., 7 Cir., 1951, 186 F.2d 1017; Bernstein v. National Broadcasting Co., D.C.D.C.1955, 129 F.Supp. 817.

This is not like the cases of public figures whose pictures are exploited, without their consent, in moving pictures or in advertisements. Neither is it like the cases where newsworthy events and accompanying pictures are distorted, fictionized, garnished, ridiculed or falsified in a republication.

Summary judgment will be entered for defendant.