John RAYNOR

v.

AMERICAN BROADCASTING CO.

and

United Artists Corp.

Civ. A. No. 34318.

United States District Court
E. D. Pennsylvania.

Oct. 17, 1963.

Leonard Zack, Philadelphia, Pa., for plaintiff.

James J. Leyden, Bancroft D. Haviland, and Harold Kohn, Philadelphia, Pa., for defendants.

VAN DUSEN, District Judge.

Defendant United Artists Corp. has moved for denial of plaintiff's application of a preliminary injunction at the close of the plaintiff's evidence presented at a hearing on the above Motion held on the afternoon of October 16, 1963, pursuant to the Order of October 14, 1963. The Complaint in Equity alleges, and it is fair to infer for purposes of this Motion, that plaintiff has established that defendant United Artists Corp. has, in violation of plaintiff's right of privacy, produced a film for exhibition on television re-enacting the February 1962 crimes of aggravated robbery and burglary, with intent to commit a felony for which plaintiff was convicted on April 18, 1962, and for which he is now incarcerated in a Pennsylvania State Correctional Institution. This film is scheduled to be shown over Channel 6 (WFIL Television Studio), which is one of the three major television channels in Philadelphia, at 10:30 P.M. this evening.

■ Plaintiff called witnesses (whom he contends are representative members of the public) who testified that they did not feel it was fair, correct or proper to a criminal to rehash the facts of a crime 20 months after it occurred. Most of these witnesses did not know of the 1962 crime in which plaintiff was involved. The hearing judge ruled that whether seeing the proposed telecast would prejudice such witnesses in any view which they might have if plaintiff applied for parole or pardon from his present sentence was irrelevant. Parole and pardon are privileges (not matters of constitutional right) which are peculiarly subject to the public policy of the state, whose courts should be the ones to determine the extent to which information programs should be restricted because of possible interference with the state public policy on these privileges. Cf. Stefanelli v. Minard, 342 U.S. 117, 120–122, 72 S.Ct. 118, 120–121, 96 L.Ed. 138 (1951). Plaintiff has a companion case against WFIL Television Studio pending on appeal in the State Court.

■ For at least these two reasons, plaintiff has not sustained the burden imposed upon an applicant for a preliminary injunction to show that he is clearly entitled to relief [see Warner Brothers Pictures, Inc. v. Gittone, 110 F.2d 292 (3rd Cir. 1940); Joseph Bancroft and Sons Co. v. Shelley Knitting Mills Co., 268 F.2d 569 (3rd Cir. 1959); cf. Madison Square Garden Corp. v. Braddock, 90 F.2d 924, 927 (3rd Cir. 1937)]:

A. Plaintiff, having become a public figure through participating in crime, has no private right in his

criminal activities and has not shown that he has reverted to the lawful life of the average public citizen.

Between 1942 and 1948, plaintiff, as a juvenile, was twice convicted of burglary and larceny and once convicted of larceny and receiving stolen goods. In 1952, he was committed to prison for violation of parole. In 1954, he was given a one- to three-year term for larceny of auto and in 1956 he was convicted of burglary, larceny, and receiving stolen goods, thereby apparently also violating his parole under the 1954 conviction. See stipulation of counsel and P-5. In February 1962, he committed the two separate felonies alleged in the Complaint for which he was convicted in April 1962. Unfortunately, he elected to rob and burglarize on this occasion the home of an important official of the Philadelphia Fire Department and to kidnap his daughter, thereby further injecting himself into the public eye. Under such circumstances, plaintiff's life has ceased to be private. Warren and Brandeis, in their leading article on "The Right to Privacy," 4 Harv.L. Rev. 193, at 214–5, stated:

" * * * the general object in view is to protect the privacy of private life, and to whatever degree and in whatever connection a man's life has *ceased to be private*, before the publication under consideration has been made, to that extent the *protection is to be withdrawn.* * * *" (Emphasis supplied.)

Similarly, comment C to § 867 of the Restatement of Torts states:

" * * * one who unwillingly comes into the public eye because of his own fault, as in the *case of a criminal,* is subject to the same limitations upon his right to be let alone. Community custom achieves the same result with reference to one unjustly charged with crime or the subject of a striking catastrophe. Both groups of persons are the *ob-*

*jects of legitimate public interest during a period of time after their conduct or misfortune has brought them to the public attention;* until they have reverted to the lawful and unexciting life led, by the great bulk of the community, they are subject to the privileges which publishers have to satisfy the curiosity of the public as to their leaders, heroes, villians and victims." (Emphasis supplied.)

See, also, Aquino v. Bulletin Co., 190 Pa. Super. 528, 533, 154 A.2d 422 (1959); Bernstein v. National Broadcasting Company, 129 F.Supp. 817, 827–828 (D.D.C. 1955); cf. Schnabel v. Meredith, 378 Pa. 609, 107 A.2d 860 (1954).

Plaintiff's contention that the 18 months which have elapsed since his latest conviction make the crime no longer news must be rejected in the light of the record in this case [1] and the following language from Bernstein v. National Broadcasting Company, supra, 129 F.Supp. at 835:

"This court holds, as a matter of law, that a criminal proceeding widely publicized for a period of at least eight years and containing elements of decided popular appeal does not lose its general public interest in a period of four years or even twelve years; hence, republication in a reasonable manner was privileged."

B. Plaintiff has not shown that his name is going to be used in the telecast or that there is going to be anything unfair in its presentation.

Plaintiff has only shown that the telecast to which he objects is described as follows in the public press (see Exhibit attached to Complaint): "10:30[6] LAWBREAKER. 'The Philadelphia Story.' Two robbers enter the home of Mr. & Mrs. Dominic Innarelli, loot it, and force their young daughter to accompany them in their escape." The portion of The Philadelphia Inquirer for

[1] Plaintiff's witness, Espada, testified that he still had some recollection of the In- narelli case involving the kidnapping of a fireman's daughter.

Sunday, October 13, 1963, which plaintiff has offered in evidence shows that the telecast is for one-half hour and quotes the narrator-star (page 2) as saying: "The amount of crime has gone up, because of lack of communication between the public and the police. We in the communications media should try to foster such communication to the best of our ability. The show offers greater insight into police work. * * * I think our audience may start doing something about the problem. Maybe through greater cooperation with the police. Criminals' first threat, in the Philadelphia case and many others, is 'Don't call the cops.' Maybe after seeing our shows, they won't be afraid to call." This same page of this plaintiff's exhibit refers to "skilled police work" in this telecast on the "Lawbreaker" weekly one-half hour programs. There is nothing in the record to indicate any attempt in the telecast to identify plaintiff or to deter the reform of a former criminal by holding him up to public scorn. Also, there is no evidence that plaintiff has ever attempted to reform. As pointed out in the Bernstein case, supra, 129 F.Supp. at page 828, in the cases where recovery has been allowed on the basis of a right of privacy, "the complainant was identified by name in the publication by defendant."

The undersigned believes that the two controlling cases on this record are the Bernstein case, supra, and Miller v. National Broadcasting Company, 157 F. Supp. 240 at page 243 (D.Del.1957), in which Chief Judge Wright adopts the opinion in the Bernstein case.

The briefs of the parties are being docketed and placed in the Clerk's file.

As to the defendant American Broadcasting Co., these additional failures in the proofs should be noted:

A. It has not been shown that it is sponsoring the proposed television program at 10:30 P.M. this evening or that it has any connection with such program. Plaintiff has only shown that some A. B. C. programs are shown on Channel 6 (WFIL Television Studio).

B. It has not been shown that it is a New York corporation, so that there has been no showing of the court's jurisdiction as to this defendant.

## ORDER

And now, October 17, 1963, upon the basis of the facts and conclusions as stated in the above Memorandum, plaintiff's motion for preliminary injunction filed October 14, 1963, is denied.