## Sheaffer v. Shippensburg Chronicle

Before Shughart, P.J., and Rambo, J.
*John H. Broujos,* for plaintiffs.
*David E. Lehman,* for defendants.

RAMBO, *J.*, April 15, 1977 — On July 15, 1975, defendants caused to be published in the Shippensburg Chronicle, a bi-weekly newspaper printed in the Shippensburg, Pa., area, the following item in its "Memories" column:

"Reuben M. Sheaffer [plaintiff-husband herein] and another individual were arrested by State Police for setting up and maintaining illegal gambling devices."

This statement is essentially a capsulization of a July 4, 1950, news article reporting the arrest of plaintiff-husband and others for maintaining gambling devices discovered in a raid at a local establishment several days prior to the article's publication.

Plaintiffs brought an action against defendants, alleging defamation and invasion of privacy as a result of the republication of plaintiff-husband's arrest of 25 years ago. Defendants filed an answer with new matter, denying all averments of the complaint, other than those relating to identity,

agency, employment or ownership. Under new matter, defendants allege that the complaint fails to state a cause of action upon which relief can be granted. Twenty-six days after the filing of the answer with new matter, defendants filed a motion for judgment on the pleadings, pursuant to Pa. R.C.P. 1034. Two months later, plaintiffs filed their reply to new matter, denying all averments in the new matter, except the averment of truth of the published statement, which plaintiffs admitted. Oral argument was then heard on defendants' motion, and the matter is now ripe for decision.

We note at the outset the general rule that judgment on the pleadings is appropriate only in "clear cases, free from doubt, where there are no issues of fact, and only where the case is so clear that 'a trial would clearly be a fruitless exercise' ": 2 Goodrich-Amram 2d §1034(b):1 (1976). See Wade v. Heisey, 243 Pa. Superior Ct. 8, 364 A.2d 423 (1976).

I. *Libel.*

Plaintiffs have admitted the truth of the statements contained in the article. Although plaintiffs refused to concede at oral argument that this admission bars their libel claim, case law dictates this result.[1] Our Supreme Court has held that

---

1. Plaintiffs argue that the Act of April 11, 1901, P.L. 74, sec. 2, 12 P.S. §1582, established a bifurcated test for defenses to libel actions. Their position is that the language of the statute sets up a defense only when the allegedly libelous material is "substantially true *and* . . . proper for public information . . ." (Emphasis supplied.) They claim that, notwithstanding their admission as to the truth of the statement, it was not "proper for public information" and was, therefore, not justified. Our Supreme Court has not held so and in Corabi v. Curtis Publishing Co., 441 Pa. 432, 273 A.2d 899 (1971), the statute relied upon by plaintiffs was cited by the court in connection with its holding that truth is an absolute defense in libel actions.

truth is a "complete and absolute defense" to a claim for libel: Corabi v. Curtis Publishing Co., 441 Pa. 432, 449, 273 A.2d 899, 908 (1971). Plaintiffs' admission, therefore, provides defendants with an absolute defense to the libel claims, and judgment on the pleadings as to those claims is appropriate.

II. *Invasion of Privacy.*

A. *Plaintiff-Wife's Claim.*

Restatement 2d, Torts, §652I reaffirms the personal character of the right of privacy:

"The right protected by the action for invasion of privacy is a personal right, peculiar to the individual whose privacy is invaded. The cause of action is not assignable, *and it cannot be maintained by other persons such as members of the individual's family, unless their own privacy is invaded along with his.*" Section 652I, supra, comment a. (Emphasis supplied.)

Section 652D emphasizes that the right of action belongs to the one brought into the public eye against his will: "One who gives publicity to a matter concerning the private life of another is subject to liability *to the other* for invasion of his privacy." (Emphasis supplied.) The emphasis is on a direct, and not derivative, right of recovery by the individual who is expressly mentioned in the publication. See Aquino v. Bulletin Co., 190 Pa. Superior Ct. 528, 154 A.2d 422 (1959). Since plaintiff-wife was neither identified nor referred to in the statement, she has failed to state a cause of action for invasion of privacy, and judgment on the pleadings for defendants as to her claim is warranted. See Frick v. Stevens, 43 D. & C. 2d 6, 46, 17 Cumberland 129, 159 (1967) (Weidner, J.); Hendrickson v. California Newspapers, Inc., 48 Cal. App. 3d 59, 121 Cal. Rep. 429 (1975).

B. *Plaintiff-Husband's Claim.*

Finally, we must pass on the more difficult question posed by defendants' motion as to plaintiff-husband's invasion of privacy claim. The discussion of right to privacy versus freedom of the press must begin with an analysis of Cox Broadcasting Corp. v. Cohn, 420 U.S. 469 (1975).

In the Cox case, the parents of the deceased victim of a rape sued for invasion of privacy arising from television broadcasts using the name of their daughter. This cause of action was based on a Georgia statute prohibiting the publication or broadcasting of the name of a rape victim. The Georgia Supreme Court held that the complaint stated a cause of action. The United States Supreme Court reversed, stating the issue in this manner:

"[W]hether, consistently with the First and Fourteenth Amendments, a State may extend a cause of action for damages for invasion of privacy caused by the publication of the name of a deceased rape victim which was publicly revealed *in connection with the prosecution of the crime.*" 420 U.S. at 471. (Emphasis supplied.)

In the Cox case, eight months after the rape, five of the six defendants appeared in court to enter guilty pleas to rape. The United States Supreme Court pointed out that the television broadcast, revealing the victim's name was "later that day." In his concurring opinion, Justice Douglas stated: "there is no power on the part of the government to suppress or penalize the publication of 'news of the day.'"

The court chose to limit the scope of inquiry in the case to the following:

"Rather than address the broader question

whether truthful publications may ever be subjected to civil or criminal liability consistently with the First and Fourteenth Amendments, . . . it is appropriate to focus on the narrower interface between press and privacy that this case presents, namely, whether the State may impose sanctions on the accurate publication of the name of a rape victim obtained from public records — more specifically, from judicial records which are *maintained in connection with a public prosecution* and which themselves are open to public inspection. We are convinced that the State *may not do so.*" 420 U.S. at 491. (Emphasis supplied.)

The reasons for the above holding appear rooted in a concern for public information regarding *current* events. The court noted the role of the press in bringing to the individual with "limited time and resources" the facts of government operation.

In contrast to the reporting of current events, as was the case in Cox, we have before us a lapse of 25 years between the occurrence of the event and the report to the public. Comment k to Restatement 2d, Torts, §652D, states that a lapse of time since the event which made plaintiff a public figure: "is . . . a factor to be considered, with other facts, in determining whether the publicity goes to unreasonable lengths in revealing facts about one who has resumed the private, lawful and unexciting life led by the great bulk of the community."

The comment concludes that while "lapse of time may not impair the authority to give publicity to a public record, the pointing out of the present location and identity of the individual raises a quite different problem."

In light of the above, reporting potentially offensive facts that occurred 25 years ago, which does

not serve the interests of promoting fair trials or informing the public of contemporary governmental activities today, is quite different from socially valuable news reporting. It is possible that a fact once public has become private due to lapse of time, and this matter was dealt with in Briscoe v. Reader's Digest Association, 4 Cal. 3d 529, 537, 543, 483 P.2d 34, 93 Cal. Rep. 866 (1971). One who committed a truck hijacking 11 years earlier was named in an article dealing with hijacking. The court held that "truthful reports of *recent* crimes and the names of suspects or offenders will be deemed protected by the First Amendment." But the case before the court compelled a decision "whether reports of the facts of *past* crimes and the identification of *past* offenders serve these same public-interest functions." 93 Cal. Rep. at 871. (Emphasis in original.)

The court held that plaintiff had stated a cause of action, and overruled the lower court's demurrer. In overruling the demurrer and sending the case back for trial, the court said:

"It is for the trier of fact to determine (1) whether plaintiff had become a rehabilitated member of society, (2) whether identifying him as a former criminal would be highly offensive and injurious to the reasonable man, (3) whether defendant published this information with a reckless disregard for its offensiveness, and (4) whether any independent justification for printing plaintiff 's identity existed." 93 Cal. Rep. at 876. It is important to note that the United States Supreme Court in the Cox case, supra, cited Briscoe and did not find fault with the California court's decision.

The Briscoe case alludes to another factor to be considered in dealing with publication of past

criminal records. That is the resurrection of yesterday's "hot" news that has since become lost in the archives, and the state's interest in the integrity of the rehabilitative process.

The court in Briscoe cited Melvin v. Reid, 112 Cal. App. 285, 297 P. 91, 93 (1931), as follows:

"One of the major objectives of society . . . and of the administration of our penal system, is the rehabilitation of the fallen and the reformation of the criminal. . . . Where a person has . . . rehabilitated himself, we, as right-thinking members of society, should permit him to continue in the path of rectitude rather than throw him back into a life of shame or crime."

In Pennsylvania we have the case of Schnabel v. Meredith, 378 Pa. 609, 107 A.2d 860 (1954), in which the Quakertown Free Press, a weekly newspaper in general circulation in Quakertown, Bucks County, was comparing police efforts to eradicate gambling activities in counties adjacent to Bucks. Responding to the appellant's assertions that the gambling information was protected by his right to privacy, the court stated:

"The appellant would hardly assert that, at the time the slot machines were found on his property, it was an unreasonable interference with his privacy to disclose that fact to the various news-dispersing media. It is beyond question that, at the time, his activities were a legitimate matter for public inquiry — and that is so whether the appellant came willingly or unwilling into public notice. Nor is the mere lapse of time between the date of the seizure of the slot machines on the appellant's property and the date of the republication of that fact determinative, per se, of the question whether the appellant had so far 'reverted to the lawful and

unexciting life led by the great bulk of the community' as not to be any longer a proper subject of public interest. The result in each case depends upon a balancing of the conflicting interests, — the interest of a person not to have his privacy invaded, on the one hand, and, on the other, the legitimate interest of the public to be informed." 378 Pa. at 615, 107 A.2d at 863.

Although Schnabel affirmed a judgment of compulsory nonsuit against plaintiff, important differences between that case and the present one exist. In Schnabel, the time lapse between arrest and publication was six months; in the present case, the time span was 25 years. In Schnabel, the article concerned ongoing investigations by federal and state authorities into gambling; here, no such investigations have been brought to the court's attention. Moreover, in Schnabel the court specifically stated that the "passage of the six-month interval did not wipe away the notoriety occasioned by [plaintiff's] possession of the machines." 378 Pa. at 615, 107 A.2d at 863. The passage of 25 years, however, might bring about a different result.

Our review of the substantive law in this area leaves us with the firm conviction that jury questions are present. In Aquino v. Bulletin Co., 190 Pa. Superior Ct. 528, 542, 154 A.2d 422, 430 (1959), the court stated: "The publication of a newsworthy event should always be privileged, unless its presentation is such that the intrusion upon the lives of the parties named in it clearly goes beyond the limits of decency."

What exceeds limits of decency, what constitutes legitimate public concern or newsworthiness are issues of fact to be determined by the jury.

The court in Virgil v. Time, Inc., 527 F.2d 1122,

1129 (9th Cir. 1975), reached a similar conclusion: "Liability may be imposed for an invasion of privacy only if 'the matter publicized is of a kind which * * * is not of legitimate concern to the public.'

" . . .

"We cannot agree that the First Amendment requires that the question must be confined to one of law to be decided by the judge. Courts have not gone so far in other areas of the law involving First Amendment problems, such as libel and obcenity. The testing of facts against a standard founded on community mores does entail judgment of the court itself. But if there is room for differing views as to the state of community mores or the manner in which it would operate upon the facts in question, there is room for the jury function. The function of the court is to ascertain whether a jury question is presented."

This court does so ascertain that in plaintiff-husband's cause of action for invasion of privacy, jury questions are presented.

Pa. R.C.P. 1034 states that judgment on the pleadings will be granted only in clear cases and where there are no issues of fact. Defendants' motion for judgment on the pleadings is therefore denied as to plaintiff-husband's claim for invasion of privacy.

## ORDER

And now, April 15, 1977, for the reasons set forth in the opinion filed this date, defendants' motion for judgment on the pleadings is

1. granted as to plaintiffs' action based on libel

2. granted as to plaintiff-wife's suit for invasion of privacy

3. denied as to plaintiff-husband's suit for invasion of privacy