## Lawrence v. Walker

*William G. Tressler* and *J. Michael Dorezas,* for plaintiff.

*David D. Engle,* for defendant Walker.

*Kathleen V. Yurchak,* for defendants Carter, Klug, Saadi, Rod and Straight.

*David F. Wilk,* for defendant McCann.

*Virginia B. Eisenstein,* for defendant APS.

RUEST, *J.,* September 11, 2009—Presently before the court are defendant McCann's motion for summary judgment on the second amended complaint; defendant Walker's motion for summary judgment on the second amended complaint; plaintiff's motion for partial summary judgment on the second amended complaint against

defendants Walker, McCann and Klug; defendants Carter, Klug, McCann, Saadi, Rod and Straight's motion for summary judgment on the second amended complaint; defendant American Philatelic Society's motion for summary judgment on the second amended complaint; and counterdefendant's motion for summary judgment on the second amended counterclaim.

## BACKGROUND

This case arises out of the 2007 election of officers for the American Philatelic Society (APS). The plaintiff ran unsuccessfully for the presidency, and had previously run unsuccessfully for president in 1997. Plaintiff is also active in the American Philatelic Research Library (APRL).

## PROCEDURAL HISTORY

Plaintiff initiated this cause of action by filing a writ of summons on October 9, 2007. This writ was followed by a complaint filed on December 5, 2007. Upon the filing of preliminary objections by defendants, plaintiff filed his first amended complaint on January 7, 2008. Defendants subsequently filed preliminary objections to the first amended complaint, which resulted in the filing of the second amended complaint. Preliminary objections were again filed by all defendants, and the court ruled on them on June 12, 2008. Defendants Carter, Klug, McCann, Neil, Saadi, Rod and Straight filed an answer and counterclaim to the second amended complaint on September 18, 2008.

## DISCUSSION

In Pennsylvania, motions for summary judgment are governed by the well-established standard set forth below:

"Pennsylvania law provides that summary judgment may be granted only in those cases in which the record clearly shows that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. The moving party has the burden of proving that no genuine issues of material fact exist. In determining whether to grant summary judgment, the trial court must view the record in the light most favorable to the non-moving party and must resolve all doubts as to the existence of a genuine issue of material fact against the moving party. Thus, summary judgment is proper only when the uncontroversial allegations in the pleadings, depositions, answers to interrogatories, admissions of record and submitted affidavits demonstrate that no genuine issue of material fact exists, and that the moving party is entitled to judgment as a matter of law. In sum, only when the facts are so clear that reasonable minds cannot differ, may a trial court properly enter summary judgment." *Barnish v. KWI Building Company,* 916 A.2d 642, 645 (Pa. Super. 2007).

Rule 1035.2 of the Pennsylvania Rules of Civil Procedure provides that where the non-moving party bears the burden of proof, that party must present facts sufficient to establish a prima facie case. Pa.R.C.P. 1035.2(2). Mere issues of fact are insufficient to defeat the motion. The non-moving party must produce admissible evidence

to controvert the motion. *Id.* In support of a motion for summary judgment, the moving party may show that the non-moving party is unable to satisfy an element of his cause of action or defense. *First Pennsylvania Bank N.A. v. Triester,* 251 Pa. Super. 372, 380 A.2d 826 (1977).

## I. *Defendant McCann's Motion for Summary Judgment on the Second Amended Complaint*

The basis for plaintiff's claim of defamation against defendant McCann is that defendant McCann advised plaintiff, prior to the 2007 APS election, that defendant McCann had heard that plaintiff, if elected, would fire APS Executive Director Peter C. Mastrangelo. Defendant McCann does not deny having this conversation with plaintiff. In Count 1 of his second amended complaint, plaintiff asserts that defendant McCann made the statement with full knowledge that it was false and with reckless disregard of whether it was true or false. Plaintiff has produced no evidence to support these allegations. Plaintiff's testimony makes it clear that defendant McCann shared this allegation with plaintiff as a rumor defendant McCann had heard and was relating to plaintiff. There is no evidence that defendant McCann continued to discuss the rumor after plaintiff assured him it was false.

Defendant McCann argues, in the alternative, that plaintiff is a limited purpose public figure. Defendant McCann cites plaintiff's voluntary involvement in the discussion of issues involving APS management, including the Match Factory purchase, and running for president of the APS on two separate occasions. As a limited

purpose public figure, plaintiff would need to allege and prove that the allegedly defamatory statements he is attributing to Dr. McCann were made with actual knowledge that they were false or with reckless disregard of whether they were false or not. *New York Times Co. v. Sullivan,* 276 U.S. 254, 279-80 (1964). A defamatory statement is one that tends to blacken a person's reputation and expose them to public hatred, contempt or ridicule. *Tucker v. Philadelphia Daily News,* 577 Pa. 598, 614, 848 A.2d 113, 124 (2004). It is not enough that a person be embarrassed or annoyed, he must have suffered the kind of harm which has grievously fractured his standing in the community of respectful society. *Id.* The court determines plaintiff is a public figure for the limited purpose of the APS and its election. In light of this determination, the court further finds no evidence has been presented to show that defendant McCann acted with the requisite malice for defamation.

## II. *Defendant Walker's Motion for Summary Judgment on the Second Amended Complaint*

Plaintiff's claims of defamation against defendant Walker arise from a campaign letter sent to approximately 38,000 APS members by defendant Walker. The basis for plaintiff's claims are defendant Walker's criticism of plaintiff for his role in relocating APS headquarters to the Match Factory and defendant Walker's criticism of plaintiff's political writings. Defendant Walker was highly critical of plaintiff's chairmanship of the committee that sought a new home for APS and that ultimately recommended the Match Factory location.

Defendant Walker was particularly critical of plaintiff's cost estimates. Plaintiff alleges these criticisms were defamatory.

As previously stated, "[l]ibel is the malicious publication of printed or written matter which tends to blacken a person's reputation and expose him to public hatred, contempt, or ridicule." *Tucker v. Philadelphia Daily News, supra.* To be actionable, the plaintiff "must have suffered the kind of harm which has grievously fractured his standing in the community of respectable society." *Id.*

The passage in defendant Walker's April 23, 2007 campaign letter dealing with plaintiff's political philosophy stated as follows:

"On another note, I would like to suggest that you search the internet for the following 'Ken Lawrence + communism' and 'Ken Lawrence + anarchist'. My search came up with 520,000 hits. These included blogs and chat rooms with contributions signed by candidate for APS President Ken Lawrence using his well-known email address. Do your own reading and make your own decision."

Plaintiff must show that this passage was defamatory. 42 Pa.C.S. §8343(a)(1).

Plaintiff cannot.

Plaintiff has argued that since recipients of defendant Walker's mailing may have viewed the statements about communism and anarchism as defamatory, they must be defamatory. The test is not, however, whether some recipient of the communication thinks it is defamatory. The

test is whether the court, after considering the writing and its circumstances, determines that it was capable of a defamatory meaning. *Tucker v. Philadelphia Daily News, supra.*

Describing someone's political philosophy is not defamatory. *Rybas v. Wapner,* 311 Pa. Super. 50, 55, 457 A.2d 108, 110 (1983); see also, *Raible v. Newsweek Inc.,* 341 F. Supp. 804, 807 (W.D. Pa. 1972). Accusations of communist associations or "communist tendencies" are not libelous. *Clark v. Allen,* 415 Pa. 484, 496, 204 A.2d 42, 48 (1964); *McAndrew v. Scranton Republican Publishing Co.,* 364 Pa. 504, 513-14, 72 A.2d 780, 784 (1950). In *Clark,* the court stated:

"Americans sincerely and sharply disagree as to what actions and/or words and/or policies aid the communist cause, or what show communist tendencies, or what amounts to an 'appeasement' of communism, or what is a 'pro-communist,' or exactly what is meant by the term 'soft on communism.' While these words . . . often are undoubtedly intended to be derogatory, they are not libelous." 415 Pa. at 495, 204 A.2d at 47.

The *McAndrew* court held that "[t]o say a man is a communist or a socialist is not to defame him." 364 Pa. at 514, 72 A.2d at 784.

A number of cases previously held it was defamatory to call someone a communist, but they no longer have any legal force. They were decided in a time when communism was illegal, starting with the Federal Communist Control Act in 1954 until *Blawis v. Bolin,* 358 F. Supp. 349 (D. Ariz. 1973) in 1973, which ruled the Act was

unconstitutional. For example, in *Solosko v. Paxton,* 4 D.&C.2d 240 (Somerset Cty. 1954), a statute made it a felony to be a communist so an accusation of being a communist was an accusation of being a criminal and was therefore defamatory. Similarly, accusations of anarchism or of being an anarchist are incapable of defamatory meaning. The court determines defendant Walker's statements regarding communism and anarchism were incapable of defamatory meaning.

Defendant Walker further argues that the statements are true. Truth is a defense to an action for defamation. 42 Pa.C.S. 8343(b)(1). Truth is established if a defendant shows that the alleged libel was substantially true. *Schnabel v. Meredith,* 378 Pa. 609, 612, 107 A.2d 860, 862 (1954); *Chicarella v. Passant,* 343 Pa. Super. 330, 341, 49 A.2d 1109, 1115 (1985).

Defendant Walker argues that plaintiff is a marxist, or at least subscribes to the tenets and beliefs of marxism. Evidence has been presented to show that plaintiff agrees with statements in the *Communist Manifesto* and other writings of Karl Marx. Plaintiff told at least three APS members that he was a communist and one person even refers to him as "Red". Plaintiff has also been a prolific writer, penning the introduction for a printing of *A Workers' Inquiry* by Marx, various articles for marxist websites and communist newspapers, and even a presentation at a conference entitled "Proceedings of the Caucus for Marxism and Art."

Regarding the allegation that plaintiff is an anarchist, while plaintiff has not been as open about any affiliations with anarchists, his works have been distributed by an-

archist organizations and he has presented nothing to dispute defendant Walker's allegation that plaintiff also subscribes to anarchist beliefs. The evidence clearly shows that defendant Walker's comments in the campaign letter regarding plaintiff, communism and anarchism were or are substantially true. They are therefore not actionable.

Defendant Walker also argues that the campaign letter's references to the building project were true. Defendant Walker alleged that the APS faced serious financial challenges, noting that the new building cost three times more than it was supposed to cost, that the old building was sold for half of what it was supposed to bring in, and the APS then had its largest debt in its history. Defendant Walker's letter stated that he "personally [held] [plaintiff] Lawrence and [Robert] Lamb responsible for this bungled mess." He then stated that their actions appeared to him to be gross negligence. Plaintiff took umbrage at the accusation of negligence, but disputed little in this passage. He does not dispute the debt level or being in charge of the project.

The allegation that the project was going to cost three times the proposed cost was substantially true. The APS Board of Directors met on August 23, 2000, where Robert Lamb informed the board it would cost $4.7 million to refurbish the exterior of all of the buildings except the block warehouse. The APS board met again on January 18, 2001, at which time Dennis Gilson, the APS' building project manager, informed the board that the cost to rehab the entire property, including the block warehouse, would be about $6,000,000. The ultimate cost of the work

was about $15,000,000. Clearly plaintiff had made and endorsed statements placing the construction costs at approximately one-third of the actual costs.

The allegation that the sale of the former APS building only brought in half of what it was supposed to bring in was also substantially true. Defendant Walker cites an email sent to the APS and APRL boards, as well as to Robert Lamb, in which plaintiff stated he had a firm $3.9 million offer for the old building from Harvey Abrams, who headed a nonprofit corporation planning a sports and Olympics museum. The building ultimately sold for around $2,000,000.

The allegation that the APS then had its largest debt in its history was not contested by plaintiff. Plaintiff only contests the allegation of negligence. This was only an opinion, however, and is not actionable.

### III. *Defendants Carter, Klug, McCann, Saadi, Rod and Straight's Motion for Summary Judgment on the Second Amended Complaint*

Counts 4, 5, 6, 7 and 8 of plaintiff's second amended complaint arise from an advertisement and website referred to by all parties as the "Elephant ad." In each of the counts, the complaint alleges that by maliciously publishing false statements, defendants Saadi, Rod, Straight and Carter intentionally damaged plaintiff's good name and reputation. Defendants argue the Elephant ad and websites are political expressions protected by the First Amendment. Defendants further argue plaintiff has failed to produce evidence that any of the documents

are false or that any of the defendants acted with actual malice.

As noted above, truth is a defense in a lawsuit for libel. Truth does not need to be absolute; it is sufficient to show that the alleged libel was substantially true. *Schnabel v. Meredith,* 378 Pa. 609, 612, 107 A.2d 860, 862 (1954). Plaintiff disputes very little of the content of the Elephant ad and the websites. The court determines defendants have shown that the Elephant ad and the websites are substantially true and contain no outright false statements.

Furthermore, the content of the ads is protected political speech and is not capable of defamatory meaning. After reviewing the material in question in context, *Corabi v. Curtis Publishing Co.,* 441 Pa. 432, 444-45, 273 A.2d 899, 906 (1971), and considering the nature of the audience receiving the communication, the court determines the material is not capable of defamatory meaning. Vigorous campaign rhetoric does not give rise to a defamation claim. *Clark v. Allen, supra.*

As noted above, plaintiff was a limited-purpose public figure. As such, he is required to present evidence of actual malice. Plaintiff has been unable to show actual malice. The court requires clear and convincing evidence that the defendants knew their statements were false or that they entertained serious doubts about the truth of their statements and proceeded anyway. *Curran v. Philadelphia Newspapers Inc.,* 376 Pa. Super. 508, 513, 546 A.2d 639, 642 (1988); *New York Times, supra.* Plaintiff is unable to do so. Additionally, the court has determined the statements were substantially true.

In Count 3 of the second amended complaint, plaintiff alleges defendant Carter made false statements about plaintiff to a friend and colleague, Dr. Charles M. Posner. Plaintiff specifically alleges defendant Carter asked Dr. Posner whether plaintiff had fled Mississippi to East Germany for refuge by the communist government, where he worked as a Stasi agent. Dr. Posner debunked this rumor for defendant Carter, who then dropped the matter.

Dr. Posner was the only recipient of defendant Carter's communication. As he already knew it was false, there was no defamation. Defendant Carter merely asked a question of his friend and colleague, Dr. Posner, seeking confirmation or refutation of the rumor which had been circulating about plaintiff. Such a question, particularly in light of its answer and its limited audience, is incapable of defamation.

In Count 11 of the second amended complaint, plaintiff alleges that defendant Klug failed to perform her fiduciary duties as president of APS. Specifically, plaintiff alleges defendant Klug failed to implement the policy adopted by the APS Board of Directors in 2004 to assure that APS elections would "maintain a high level of civility in all aspects of campaigning" and failed to appoint an Election Ethics Board.

Defendant Klug argues she is protected from liability as an uncompensated officer of a 501(c)(3) organization. APS is a 501(c)(3) organization. To perfect liability against defendant Klug, plaintiff must prove that she knew or had reason to know that her act or omission created a substantial risk of actual harm to the person or

property of another. 42 Pa.C.S. §8332.2(a). Plaintiff has failed to produce such evidence.

## IV. *Defendant American Philatelic Society's Motion for Summary Judgment on the Second Amended Complaint*

In Count 4 of the second amended complaint, plaintiff alleges the APS published an advertisement in its magazine, *American Philatelist,* which was defamatory. The advertisement was printed during the course of the 2007 election campaign. The standard for defamation has been discussed above. As regards a publisher, plaintiff must show that the publisher entertained serious doubts about the truth of the publication and published it anyway. *Weaver v. Lancaster Newspapers Inc.,* 875 A.2d 1093, 1097 (Pa. Super. 2005); *Curtis Publishing Co. v. Butts,* 338 U.S. 130, 153 (1967). The standard of proof is clear and convincing evidence. *New York Times v. Sullivan, supra.*

The APS is a corporation and as such cannot possess malice since it cannot know verity or falsity. See *St. Amant v. Thompson,* 390 U.S. 727, 730-31 (1968). It must act through the individuals in its organization responsible for making such determinations and decisions. The court must therefore look to the individual who had actual knowledge of the advertisement and who vetted it for publication. That individual is Executive Director Peter Mastrangelo.

Plaintiff has presented no evidence to indicate Mr. Mastrangelo entertained any doubts about the truth of the publication. As discussed above, the allegations in

the ad were substantially true. Mr. Mastrangelo had no reason to entertain any doubts. Mr. Mastrangelo did, however, investigate the statements in the ad. He found them to be truthful and approved publication.

In Count 11 of the second amended complaint, plaintiff alleges the APS failed to meet its fiduciary duty to plaintiff. Defendant APS maintains it owed no fiduciary duty to plaintiff as a fiduciary duty is that which is owed by a board member to the organization, and not owed by the organization to a member.

Furthermore, plaintiff has admitted he has suffered no loss of income or earnings as a result of the acts alleged to have occurred. Plaintiff names only the costs of his election campaign as damages. Plaintiff cannot present any evidence to show that, but for the action and inaction of the APS, he would have won the election and that a properly appointed Election Ethics Board would have resulted in a different outcome to the election.

Defendant APS also argues that 42 Pa.C.S. §5524 sets the statute of limitations for actions to recover damages to person or property based on negligent, intentional, or otherwise tortious conduct at two years. Likewise, 42 Pa.C.S. §5523 sets the statute of limitations period for libel, slander or invasion of property at one year. Additionally, defendant APS argues the doctrine of accord and settlement bars recovery as plaintiff agreed to a settlement under which an ethics complaint was withdrawn and all parties signed a letter to be published in the *American Philatelist*. Finally, defendant APS argues plaintiff has failed to exhaust his administrative remedies within APS as required by the APS bylaws.

The court determines these grounds do not need to be addressed at length as summary judgment is clearly appropriate based on the lack of evidence. Nonetheless, the court determines all four of these additional grounds are a valid basis for granting summary judgment.

## V. *Plaintiff's Motion for Partial Summary Judgment on the Second Amended Complaint*

Plaintiff filed a motion for partial summary judgment on the second amended complaint. Relative to defendant Walker, plaintiff requested that the court find several facts relating to the purchase and renovation costs of the Match Factory to be without controversy pursuant to Pa.R.C.P. 1035.5. Rule 1035.5 requires the court to "make an order specifying the facts that are without controversy" if partial summary judgment is granted. Because the court is denying plaintiff's motion for partial summary judgment, and is granting the defendants' motions for summary judgment in their entirety, such an order does not need to be entered.

Plaintiff also seeks partial summary judgment against defendant Carter as to Count 3. Specifically, plaintiff brings his motion under Pa.R.C.P. 1035.2(1), seeking to have paragraphs 119, 120, 121 and 125 of the second amended complaint deemed admitted pursuant to Pa.R.C.P. 1029(b) (averments not specifically denied are deemed to be admitted). Because the court is granting the defendants' motions for summary judgment in their entirety, the court declines to deem the specified paragraphs as admitted.

Finally, plaintiff seeks partial summary judgment against defendant Klug as to Count 11. The court dis-

cussed the evidence relative to plaintiff's claims against defendant Klug in section III, above.

### VI. *Counterdefendant's Motion for Summary Judgment on the Second Amended Counterclaim*

In Count 1 of the second amended counterclaim, counterclaimants allege that the filing of the underlying lawsuit by counterdefendant constituted an abuse of process. Counterdefendant maintains counterclaimants cannot establish a valid cause of action for abuse of process. "An abuse of process arises when a party employs legal process for some unlawful purpose, not the purpose for which it was intended." *Triester v. 191 Tenants Association,* 272 Pa. Super. 271, 279, 415 A.2d 698, 702 (1979). Counterdefendant presents the basis for his defamation claim in the second amended complaint. He reproduces and cites the statements that he claims are defamatory and by whom they were made.

"To establish a claim for abuse of process it must be shown that the defendant (1) used a legal process against the plaintiff; (2) primarily to accomplish a purpose for which the process was not designed; and (3) harm has been caused to the plaintiff." *Harris v. Brill,* 844 A.2d 567, 572 (Pa. Super. 2004). Counterclaimants are unable to substantiate their claim that counterdefendant pursued any unlawful purpose in filing the second amended complaint.

In Count 2 of the second amended counterclaim, counterclaimants allege counterdefendant breached a contract, based on a letter signed by counterdefendant, counterclaimants, and several other individuals, regard-

ing the resolution of an ethics complaint involving the Elephant ad. Counterclaimants allege the agreement prohibited the filing of the underlying suit. Counterdefendant maintains the signed letter was not a contract.

"[T]he formation of a contract requires a bargain in which there is a manifestation of mutual assent to the exchange and consideration." Restatement (Second) of Contracts §17(1) (1979). When there is lack of manifested intent or consideration, a contract does not exist. *Estate of Beck,* 489 Pa. 276, 414 A.2d 65 (1980). The letter signed by the parties does not contain any indication that it is a contract. It does not articulate intent or consideration on the part of any of the signatories. There is no bargained-for exchange. There is no exchange of promises. The court determines the letter is just a letter and is not a contract.

Additionally, the court determines counterclaimants Klug, McCann and Walker were not parties to the letter, which they styled as a contract, and therefore have no cause of action against counterdefendant for breach of contract.

In Count 3 of the second amended counterclaim, counterclaimants allege counterdefendant made a misrepresentation by signing the letter. Counterdefendant maintains this letter did not preclude him from litigating the defamation actions alleged to have occurred prior to the signing of the letter.

The tort of misrepresentation consists of making a misrepresentation of fact, opinion, intention or law, for the purpose of inducing another to act or refrain from

action and the reliance upon it. Restatement (Second) of Torts §525. The court finds nothing in the text of the letter by which counterdefendant agreed not to pursue litigation. The letter states the signatories will work together to ensure civility in elections and to reform the election process within the APS.

In Count 4 of the second amended counterclaim, counterclaimants allege negligence by counterdefendant for his alleged failure to oversee the promulgation of election rules while an officer of APS prior to the 2007 election. Counterdefendant maintains there is no cause of action for negligence based on economic loss.

Counterclaimants make no claim of physical injury or property damage due to the alleged negligence. The doctrine of economic loss precludes any action for negligence stemming from purely economic damages. *Adams v. Copper Beach Townhome Communities L.P.,* 816 A.2d 301, 305 (Pa. Super. 2003). Accordingly, their claim for negligence cannot succeed.

The court additionally determines that, just as defendant Klug owed no fiduciary duty to plaintiff, counterdefendant owed no such duty to counterclaimants.

In Count 5 of the second amended counterclaim, counterclaimants allege defamation by libel by counterdefendant for comments he made regarding the commitment of APS board members to following the election policy rules. Counterdefendant maintains his published comments lacked defamatory meaning.

In the statement, counterdefendant stated that the majority of the APS board did not share the goals of

preventing smearing in APS elections and that they repealed provisions of the election policy that would prevent such campaigning. Counterdefendant notes that he did not single out any one specific person and argues that he was expressing his opinion based on the actions of the board members.

Additionally, just as counterdefendant is a limited-purpose public figure, so are the APS board members. They are officers in a private organization with over 44,000 members, publish regularly, and are very much thrust into the center of the election controversy by virtue of their role in setting the rules by which ethics and civility are to be governed in APS elections. Therefore, as discussed above, counterclaimants must show malice on the part of counterdefendant. They cannot do so.

In Count 6 of the second amended counterclaim, counterclaimants allege defamation by libel by counterdefendant for comments he posted on the APS Internet forums. Counterdefendant expressed the opinion that certain individuals' "priorities flow from the elite perspective." Counterclaimants argue this is defamatory. The court determines it is not.

Accordingly, the following is entered:

## ORDER

And now, September 11, 2009, the following is the order of the court:

(1) Defendant McCann's motion for summary judgment on the second amended complaint is granted.

(2) Defendant Walker's motion for summary judgment on the second amended complaint is granted.

(3) Defendants Carter, Klug, McCann, Saadi, Rod and Straight's motion for summary judgment on the second amended complaint is granted.

(4) Defendant American Philatelic Society's motion for summary judgment on the second amended complaint is granted.

(5) Plaintiff's motions for partial summary judgment on the second amended complaint are denied.

(6) Counterdefendant's motion for summary judgment on the second amended counterclaims is granted.

The second amended complaint is dismissed.

The second amended counterclaims are dismissed.