**Bobby SEALE**

v.

**GRAMERCY PICTURES; Polygram Filmed Entertainment Distribution, Inc.; Working Title Group, Inc.; Tribeca Productions, Inc.**

No. 95–cv–3174.

United States District Court, E.D. Pennsylvania.

Dec. 18, 1996.

---

L. Glenn Scott, Philadelphia, PA, for Plaintiff.

Stephen F. Huff, Tom J. Ferber, Pryor, Cashman, Sherman and Flynn, New York City, Walter Weir, Jr., Jonathan J. Bart, Weir & Partners, Philadelphia, PA, for Defendants.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

This case arises out of the production and release of the motion picture "Panther" by

Defendants Gramercy Pictures; PolyGram Filmed Entertainment Distribution, Inc.; Working Title Group, Inc.; and Tribeca Productions, Inc. The Plaintiff Bobby Seale contends that the Defendants used, without consent, his name and likeness (use of an actor called Bobby Seale) in the film, as well as to promote the film, in violation of his common-law right of publicity. He further alleges that the Defendants' portrayal of him in the film violates his right of privacy by placing him in a "false light." Moreover, the Plaintiff alleges that the Defendants' use of his name and likeness to promote and advertise the film constitutes unfair competition and false advertising in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

Presently before the court is the Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons stated hereinafter, the court will grant in part and deny in part the Defendants' motion for summary judgment.

Rule 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In order to defeat the motion for summary judgment, the non-moving party, by its own affidavits, or by depositions, answers to interrogatories or admissions on file, as stated in Rule 56(e), "must set forth specific facts showing that there is a genuine issue for trial." As *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986), teaches, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Where the non-moving party fails to make such a showing with respect to an essential element of his case, "there can be 'no genuine issue as to any material fact,' since a complete

failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Id.* at 323, 106 S.Ct. at 2552. "The moving party is 'entitled to a judgment as a matter of law' because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.*

The court has carefully reviewed the record before it. In support of their motion for summary judgment, the Defendants have submitted portions of the Plaintiff's deposition testimony; the home video production of the film "Panther"; the book *Seize the Time: The Story of the Black Panther Party and Huey P. Newton*, written by the Plaintiff; and the book *Panther: A Pictorial History of the Black Panthers and the Story Behind the Film*, written by Mario Van Peebles, Ula Y. Taylor, and J. Tarika Lewis. In opposition to the Defendants' motion for summary judgment, the Plaintiff has submitted his responses to Defendants' interrogatories, his sworn affidavit, a copy of the cover for the home video of "Panther," and a copy of the cover for the musical CD/cassette of the film's soundtrack.

The Plaintiff's deposition testimony, his affidavit, his answers to Defendants' interrogatories, and the exhibits submitted to the court set forth the following material facts concerning which there are no genuine issues: The general subject matter of the film "Panther" deals with the emergence in the late 1960's of the Black Panther Party for Self-Defense in Oakland, California. The Black Panther Party was founded in 1966 by two young black men, the Plaintiff Bobby Seale and Huey P. Newton. Seale assumed the title of the Party's Chairman and Newton assumed the title of the Party's Minister of Defense. Eldridge Cleaver later joined the Black Panther Party and assumed the title of the Party's Minister of Information.

According to the deposition testimony of the Plaintiff, the Black Panther Party implemented "community survival programs" in Oakland to assist black residents of that community. For example, the Black Panther Party started a free breakfast program for neighborhood children, a program to test

black residents for sickle cell anemia, a senior citizens safety program to escort senior citizens to local banks and supermarkets. The Black Panther Party also organized voter registration drives and legal aid services.

Moreover, the Black Panther Party engaged in overt political activity, such as demonstrations and protests. The Plaintiff and the Black Panther Party rejected Dr. Martin Luther King Jr.'s calls for non-violent resistance to physical attack. The Plaintiff stated in his deposition that the Black Panther Party advocated that black people should own guns for "self-defense against the racist power structure or any racist who attacked us." The Plaintiff himself led a group of gun-carrying demonstrators onto the floor of the California State Legislature during a protest march in 1967. Much publicity surrounded the Black Panther Party in the late 1960's following several armed confrontations with police in which several Party members were killed.

Although by 1969 chapters of the Black Panther Party had been organized in several major cities across the country, including Philadelphia, the size and strength of the Party started to decline after 1970. Huey P. Newton had been imprisoned and convicted of manslaughter in the 1967 shooting death of an Oakland police officer. The Plaintiff resigned from the Party in 1974. The Plaintiff attributes the decline of the Black Panther Party to a campaign by the FBI to neutralize and discredit the Party.

The Plaintiff currently lives in Philadelphia, Pennsylvania. He lectures around the country and works, on an unpaid basis, for Temple University as a "community liaison." He has formed a production company called REACH Cinema Productions and is in the process of raising money to produce a major feature film and a documentary film on the Black Panther Party. The Plaintiff has written three books: *Seize the Time: The Story of the Black Panther Party and Huey P. Newton*, *A Lonely Range* (the Plaintiff's autobiography), and *Barbecuing with Bobby Seale*. The Plaintiff has also engaged in commercial advertisements for a well-known brand of ice-cream and for a local bank.

The screenplay for the movie "Panther" was written by filmmaker Melvin Van Peebles and the film was directed by his son, Mario Van Peebles. The film is based on the novel "Panther" written by Melvin Van Peebles. The film was produced and distributed by the Defendants. In May 1995, the film was released in theaters across the country. The film is now available on home video.

The film combines fiction with history. The narrator of the story is a fictitious character named "Judge," who describes his involvement with the Black Panther Party in Oakland, California during the late 1960's. The historical characters of Black Panther Party leaders Bobby Seale, Huey P. Newton, and Eldridge Cleaver are played by actors Courtney B. Vance, Marcus Chong, and Anthony Griffith, respectively. Throughout the film, the fictitious character of Judge describes his involvement in the Black Panther Party and narrates major events in the history of the Black Panther Party as the film reenacts those events.

For example, as heretofore pointed out, the Black Panther Party gained nationwide publicity after Bobby Seale and a group of Party members brandishing shotguns marched onto the floor of the California State Legislature during a protest march in 1967. The film depicts this scene in detail, focusing primarily on the character of Bobby Seale leading other Black Panther Party members, in the full Party uniform of a black leather jacket and black pants, onto the floor of the state assembly room. Moreover, the film reenacts Huey Newton's 1967 shootout with an Oakland police officer, which eventually led to Newton's imprisonment for manslaughter following the officer's death. The film also reenacts the 1968 shootout between the Oakland police and several Black Panther Party members, which shootout lead to the death of Party member "Li'l" Bobby Hutton.

The making of "Panther" is memorialized in the book *Panther: A Pictorial History of the Black Panthers and the Story Behind the Film*, published by NewMarket Press, New York. The Defendants Polygram Filmed Entertainment Distribution, Inc. and Gramercy Pictures share with others not parties to this action the copyrights to the book.

Moreover, the sound-track for the movie has been released on compact-disc (CD/cassette), to which Defendant PolyGram owns the copyright. The CD/cassette is a collection of the songs played throughout the film. It consists of various songs composed by different musicians, including the song "Express Yourself" by "JOE" and the song "We'll Meet Again" by "Blackstreet."

The promotional cover for the home video release of the movie "Panther" contains a photograph of the seven actors who portrayed members of the Black Panther Party in the film. The three people in the middle of the photograph are the actors who portrayed the real-life Black Panther Party leaders Bobby Seale, Huey P. Newton, and Eldridge Cleaver. The Plaintiff's name is mentioned on the cover in connection with a promotion for the film:

> A time of tension. Of rioting in the streets. A time of change. In Oakland, California, 1968, The Black Panthers led by Huey Newton and Bobby Seale have armed themselves and are ready to fight for freedom. To the people, they're heroes, but to the FBI they're Public Enemy Number One. Now the Feds will do everything they can—on the right or wrong side of the law—to bring them down.

Moreover, two photographs from the film appear on the cover of the musical CD/cassette. The first is the same photograph that appears on the cover for the home video— seven Black Panther members, including the actors who portrayed Seale, Newton, and Cleaver. The second photograph on the CD/cassette cover depicts the scene in the movie where Bobby Seale marched into the assembly room of the California State Legislature in 1967.

As heretofore pointed out, the Plaintiff alleges that the Defendants violated his common-law right of publicity by using, without consent, his name and likeness in connection with the film "Panther"; that the Defendants' portrayal of the Plaintiff, as the chairman of the Black Panther Party in the film, violated his right of privacy by placing him in a "false light"; and that the Defendants's use of the Plaintiff's name and likeness to promote and advertise the film constitutes unfair competition and false advertising in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

The parties do not dispute that the Plaintiff is a well-known public and historical figure due to his role as the co-founder and chairman of the Black Panther Party in 1966. As the Third Circuit recognized in *Marcone v. Penthouse Intern. Magazine for Men*, 754 F.2d 1072, 1083 (3d Cir.), *cert. denied*, 474 U.S. 864, 106 S.Ct. 182, 88 L.Ed.2d 151 (1985): "If a position itself is so prominent that its occupant unavoidably enters the limelight, then a person who voluntarily assumes such a position may be presumed to have accepted public figure status." The Plaintiff's name and his role in the Black Panther Party may be found in most history books discussing the Civil Rights Movement of the 1960's. *See, e.g.*, John Hope Franklin & Alfred A. Moss, Jr., *From Slavery to Freedom: A History of African Americans* at 518–21 (7th ed. 1994). Moreover, as heretofore pointed out, the Plaintiff presently lectures at colleges and universities throughout the country on the topic of the Black Panther Party and his role in the Party.

The film "Panther" may be categorized as a "docudrama"—"a theatrical or television motion picture presenting a dramatic recreation or adaption of actual events." J. Thomas McCarthy, *The Rights of Publicity and Privacy* § 8.9[A] n. 2 (insert 6/96) (citing cases). Accordingly, Plaintiff's right of publicity and right of privacy claims are limited to the Defendants' use of the Plaintiff's name and likeness in connection with the public and historical events surrounding the Black Panther Party and the Plaintiff's role as co-founder of the Party. The Plaintiff has not alleged a cause of action for defamation or for the tortious publication of matters concerning his private affairs or for the tortious invasion upon his private seclusion, which torts any person including public figures may bring in Pennsylvania as separate causes of actions for invasions of privacy. The Plaintiff's present claims are based on the Defendants' commercial use of Plaintiff's name and likeness in connection with his role as a public and historical figure and for portraying the Plaintiff in a false light to the public.

Accordingly, it must be noted that "[t]hose who are voluntarily in the public eye, such as celebrities and politicians, clearly have less 'privacy' than others, at least as to legitimate reporting of facts reasonably relevant to their public activities." J. Thomas McCarthy, *The Rights of Publicity and Privacy* § 5.9[B][1] (insert 3/96).

## I. Plaintiff's common-law claim for infringement of his right of publicity.

In his complaint, the Plaintiff asserts a claim for infringement of his right of publicity on the grounds that the Defendants used, without consent, his name and likeness (use of an actor called Bobby Seale) in the film "Panther," in the pictorial history book, and on the covers of the home video and the musical CD/cassette.

The court is mindful that, "[p]erhaps no aspect of the rights of privacy and publicity has been perceived as being as cloudy and muddled as liability for the use of persons' identities in 'stories,' whether denominated as 'fiction,' 'faction,' or 'docudrama.'" J. Thomas McCarthy, *The Rights of Publicity and Privacy* § 8.9[A] (insert 6/96). The law in Pennsylvania is no exception.

■ This court predicts, however, that the Pennsylvania Supreme Court will clarify the law concerning the right of publicity in Pennsylvania by adopting § 46 of the Restatement (Third) of Unfair Competition, which was recently published by the American Law Institute in 1995. Section 46 defines the right of publicity as follows:

### § 46. Appropriation of the Commercial Value of a Person's Identity: The Right of Publicity

One who appropriates the commercial value of a person's identity by using without consent the person's name, likeness, or other indicia of identity for the purposes of trade is subject to liability for the relief appropriate under the rules stated in §§ 48 and 49.

■ As stated in § 46, liability for infringing on a person's right of publicity is limited to use of another's name or likeness "for the purposes of trade." Section 47 of the Re-

statement defines the term "for the purposes of trade" as follows:

### § 47. Use for Purposes of Trade

The name, likeness, and other indicia of a person's identity are used "for the purposes of trade" under the rule stated in § 46 if they are used in advertising the user's goods or services, or are placed on merchandise marketed by the user, or are used in connection with services rendered by the user. However, use "for the purposes of trade" does not ordinarily include the use of a person's identity in news reporting, commentary, entertainment, works of fiction or nonfiction, or in advertising that is incidental to such uses.

■ Comment c to § 47 makes clear that use of a person's name and likeness in news, entertainment, and creative works does not infringe on the right of publicity. In particular, comment c states that "[u]se of another's identity in a novel, play, or motion picture is also not ordinarily an infringement.... However, if the name or likeness is used solely to attract attention to a work that is not related to the identified person, the user may be subject to liability...."

■ Moreover, use of a person's name and likeness to advertise a novel, play, or motion picture concerning that individual is not actionable as an infringement of the right of publicity. *See* cmt. a to § 47. For example, the use of another's name and likeness in the title of a movie does not infringe on the right of publicity since such use "is clearly related to the content of the movie and is not a disguised advertisement for the sale of goods or services or a collateral commercial product." *Rogers v. Grimaldi*, 875 F.2d 994, 1004–05 (2d Cir.1989). "[I]f the name or likeness is used solely to attract attention to a work that is not related to the identified person, the user may be subject to liability for a use of the other's identity in advertising." Cmt. c to § 47.

The Pennsylvania Supreme Court has recognized that there is no liability under § 652C of the Restatement (Second) of Torts, governing the privacy tort of misappropriation of name and likeness, in connection with the unauthorized publication of a

magazine article about a public figure. In *Corabi v. Curtis Publishing Co.*, the Pennsylvania Supreme Court stated:

> The flaw in plaintiff's position is that a public figure has no exclusive rights to his or her own life story, and others need no consent or permission of the subject to write a biography of a celebrity.

441 Pa. 432, 273 A.2d 899, 919 (1971).

Moreover, in addressing right of publicity claims, courts have been mindful that the First Amendment provides greater protection to works of artistic expression such as movies, plays, books, and songs, than it provides to pure "commercial" speech. For example, in *Cardtoons, L.C. v. Major League Baseball Players Assoc.*, 95 F.3d 959 (10th Cir.1996), the Tenth Circuit recently held that the First Amendment guarantee of freedom of expression outweighs the rights of publicity of professional baseball players where a trading card producer sold "parody trading cards" containing cartoons of well-known baseball players. Recognizing that the parody cards "are not commercial speech—they do not merely advertise another unrelated product," the Court held that the parody cards "are an important form of entertainment and social commentary that deserve First Amendment protection." *Id.* at 970, 976.

It is undisputed that the Plaintiff's name and likeness (use of an actor called Bobby Seale) were used in the film "Panther," in the pictorial history book, and on the covers for the home video and the musical CD/cassette. Plaintiff states in his affidavit: "At no time did I authorize or allow use of my name, likeness or character in the motion picture 'Panther' or any other advertisements, promotions or collateral products pertaining to this production."

■ The court finds that the Plaintiff has failed to raise a genuine issue of material fact showing that the Defendants' use of his name and likeness in the film "Panther," in the pictorial history book, and on the cover of the home video was "for the purposes of trade" or for a "commercial purpose." The Defendants' use of the Plaintiff's name and likeness was for the purpose of First Amendment expression: the creation, production, and promotion of a motion picture and history book which integrates fictitious people and events with the historical people and events surrounding the emergence of the Black Panther Party in the late 1960's. The Defendants' use of the Plaintiff's name and likeness on the cover of the pictorial history book and on the cover for the home video are clearly related to the content of the book and the film, the subject matter of which deals with the Black Panther Party and the Plaintiff's role as co-founder of the Party. The Defendants are entitled to judgment as a matter of law as to Plaintiff's right of publicity claim insofar as that claim relates to Defendants' use of Plaintiff's name and likeness in the film, pictorial history book, and on the cover of the home video.

■ However, the court finds that the Plaintiff has raised a genuine issue of material fact showing that the Defendants' use of the Plaintiff's name and likeness (use of an actor called Bobby Seale in the film) on the cover of the musical CD/cassette was "for the purposes of trade" or for a "commercial purpose." As heretofore pointed out, the CD/cassette consists of various songs composed by different musicians, including the song "Express Yourself" by "JOE" and the song "We'll Meet Again" by "Blackstreet." Clearly, the use of the Plaintiff's name and likeness on the cover of the musical CD/cassette does not relate to the content in the CD/cassette in the same manner as the use of the Plaintiff's name and likeness on the cover of the home video and pictorial history book relates to the content of the film and pictorial history book—the subject matter of which concerns the Black Panther Party and the Plaintiff's role as co-founder of the Party. The film and pictorial history book tell the story of the Black Panther Party and the Plaintiff's role in that Party in the late 1960's; the musical CD/cassette is merely a collection of different songs performed by different musicians, which songs have no direct connection to the Plaintiff or the history of the Black Panther Party. There is a genuine issue of material fact, therefore, whether the use of the Plaintiff's name and likeness on the cover of the musical CD/cassette is clearly related to the content of the

film "Panther" and serves as an advertisement for the film, or whether the Defendants' use of the Plaintiff's name and likeness on the cover of the CD/cassette is a disguised advertisement for the sale of the CD/cassette. *See Rogers v. Grimaldi,* 875 F.2d 994, 1004–05 (2d Cir.1989).

Accordingly, the court will grant the Defendants' motion for summary judgment as to Plaintiff's right of publicity claim insofar as that claim relates to Defendants' use of Plaintiff's name and likeness in the film, in the pictorial history book, and on the cover of the home video. However, the court will deny Defendant's motion for summary judgment as to Plaintiff's right of publicity claim insofar as it relates to the Defendants' use of Plaintiff's name and likeness on the cover of the musical CD/cassette.

## II. Plaintiff's invasion of privacy "false light" claim.

■ In Count II of his complaint, the Plaintiff alleges that the Defendants invaded his right of privacy by portraying him in a "false light" in the film "Panther." The Plaintiff's false light claim is recognized in Pennsylvania as a cause of action for invasion of privacy under § 652E of the Restatement (Second) of Torts. As heretofore pointed out, the Plaintiff has not alleged a cause of action for defamation or for the tortious publication of matters concerning his private affairs or for the tortious invasion upon his private seclusion, which privacy torts any person including public figures may bring as separate causes of action for invasion of privacy.

In *Larsen v. Philadelphia Newspapers, Inc.,* the Pennsylvania Superior Court stated the elements of a cause of action for a false light invasion of privacy claim by a public figure:

As is so clearly stated in Section 652E [of the Restatement (Second) of Torts], a publication is actionable if it is not true, is highly offensive to a reasonable person and is publicized with knowledge or in reckless disregard of its falsity. See Comments a, c & d. Further, to constitute a tortious invasion of privacy an act (publication) must 'cause mental suffering, shame or

humiliation to a person of ordinary sensibilities.'

375 Pa.Super. 66, 543 A.2d 1181, 1188, *allocatur denied,* 520 Pa. 597, 552 A.2d 251 (1988), *cert. denied,* 489 U.S. 1096, 109 S.Ct. 1568, 103 L.Ed.2d 935 (1989).

■ In his answers to Defendants' interrogatories, his affidavit, and his deposition testimony, the Plaintiff sets forth several scenes in the film "Panther" which the Plaintiff contends portray him in a false light. For example, in his affidavit the Plaintiff objects to a scene in the film in which his character is depicted purchasing firearms. The Plaintiff states in his affidavit:

I found the scene which depicted myself purchasing illegal firearms in the rear of a store, manifestly untrue and a personal affront to my responsibility as former Chairman of the Black Panther Party who always followed a deliberate and conscious policy of abiding by the mandate of applicable legal codes in order to maintain Party discipline and avoid giving police provocation. This type of portrayal casts myself as a leader and co-conspirator of what is clearly a criminal transaction while demeaning my character and methods as a leader and Chairman of the Black Panther Party.

Moreover, the Plaintiff objects in his affidavit to the scene in the movie which depicts his character and the character of Party member Eldridge Cleaver engaging in a verbal disagreement as to whether Party members should engage in acts of retaliatory violence against police officers in the wake of the assassination of Dr. Martin Luther King, Jr. The Plaintiff states in his affidavit:

More disturbing to my image as leader of the party, I never had a confrontation with Eldridge Cleaver after the assassination of Dr. Martin Luther King, Jr., and was not aware of any planned or contemplated ambush on the police after his assassination. By implication I am depicted to have lost command and control while in the presence of other Party members during this fabricated insubordination of Eldridge Cleaver.

Accordingly, the court finds that the Plaintiff has sustained his burden of raising a

genuine issue of material fact showing that the Defendants violated his right of privacy by portraying him in a false light in the film "Panther." Defendants' motion for summary judgment as to Plaintiff's false light claim will be denied.

III. Plaintiff's claim of unfair competition and false advertising under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

■ The Plaintiff bases his section 43(a) Lanham Act claim on a "false endorsement" theory, alleging that use of his name and likeness to advertise and promote the film, pictorial history book, home video, and CD/cassette gives the consumer public the false impression that the Plaintiff sponsored, endorsed, or played a role in the production of these items. "[Section] 43(a) is an appropriate vehicle for the assertion of the claim of falsely implying the endorsement of a product or service by a real person." J. Thomas McCarthy, *The Rights of Publicity and Privacy* § 5.4[D] (insert 3/96).

Section 43(a) of the Lanham Act provides:

**§ 1125. False designations of origin, false descriptions, and dilution forbidden**

**(a) civil action; any person**

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person,

. . . . .

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a).

The Second Circuit Court of Appeals, in granting a celebrity defendant's motion for summary judgment concerning a Lanham Act claim for use of the celebrity's name and likeness in a movie title, recognized that although movies, plays, books, and songs are works of First Amendment expression, they are nonetheless sold in the commercial marketplace, thus "making the danger of consumer deception a legitimate concern that warrants some governmental regulation." *Rogers v. Grimaldi*, 875 F.2d 994, 997 (2d Cir.1989). Recognizing the First Amendment concerns involved in the case, however, the Second Circuit articulated the following balancing test to apply in Lanham Act claims involving works of artistic expression:

> We believe that in general the Act should be construed to apply to artistic works only where the public interest in avoiding consumer confusion outweighs the public interest in free expression.

*Id.* at 999.

The Court stated that a violation of the Lanham Act could be found where the use of a plaintiff's name or likeness in the title to a work of First Amendment expression "has no artistic relevance to the underlying work, whatsoever" or where the title "was explicitly misleading as to source or content" of the underlying work. *Id.* The Court, however, continued:

> Many titles, however, include a well-known name without any overt indication of authorship or endorsement. . . . In these circumstances, the slight risk that such use of a celebrity's name might implicitly suggest endorsement or sponsorship to some people is outweighed by the danger of restricting artistic expression, and the Lanham Act is not applicable.

*Id.* at 999–1000.

The Defendants' use of the Plaintiff Bobby Seale's name and likeness to promote the film, pictorial history book, and home video, makes no explicit suggestion that the Plaintiff endorsed, sponsored, or approved these items or that he played a role in their production. As heretofore pointed out, the Defendants' use of the Plaintiff's name and likeness to promote the home video of the film consisted of placing on the cover of the home

video a group photograph of the seven actors who portrayed Black Panther members in the film, including the actor who portrayed the Plaintiff Bobby Seale. Moreover, the use of the Plaintiff's name in connection with the promotional statement on the cover of the home video makes no explicit suggestion that the Plaintiff endorsed, sponsored, or approved the film. The use of the Plaintiff's name and likeness in connection with the home video and pictorial history book is clearly related to the content of the film and the pictorial history book, the subject matter of which deals with the Black Panther Party and the Plaintiff's role as the co-founder of the Party.

■ Accordingly, the court finds as a matter of law that the Defendants' use of the Plaintiff Bobby Seale's name and likeness in connection with its promotion of the film "Panther," the pictorial history book, and home video is not actionable as a violation of section 43(a) of the Lanham Act on the grounds that the First Amendment guarantee of freedom of expression outweighs any potential risk that the Defendants' use of the Plaintiff's name and likeness, a photograph of the actor who portrayed the Plaintiff in the film, may implicitly suggest that the Plaintiff endorsed the film or the pictorial history book.

■ However, the court finds that the Plaintiff has raised a genuine issue of material fact showing that the Defendants' use of the Plaintiff's name and likeness on the cover of the musical CD/cassette constitutes a violation of the Lanham Act for unfair competition and false advertising. As heretofore pointed out, the CD/cassette consists of various songs by different musicians, including the song "Express Yourself" by "JOE" and the song "We'll Meet Again" by "Blackstreet." Clearly, the use of the Plaintiff's name and likeness on the cover of the musical CD/cassette does not relate to the content of the CD/cassette in the same manner as the use of the Plaintiff's name and likeness on the cover of the home video and pictorial history book relates to the content of the film and pictorial history book—the subject matter of which concerns the Black Panther Party and the Plaintiff's role as co-founder of

the Party. The film and pictorial history book tell the story of the Black Panther Party and the Plaintiff's role in that Party in the late 1960's; the musical CD/cassette is merely a collection of different songs performed by different musicians, which songs have no direct connection to the Plaintiff or the history of the Black Panther Party. There is a genuine issue of material fact, therefore, whether the use of the Plaintiff's name and likeness on the cover of the musical CD/cassette is clearly related to the content of the film "Panther" and serves as an advertisement for the film, which use would be protected by the First Amendment in this case, or whether the Defendants' use of the Plaintiff's name and likeness on the cover of the CD/cassette is a disguised advertisement for the sale of the CD/cassette. *See Rogers v. Grimaldi,* 875 F.2d 994, 999–1000 (2d Cir. 1989).

Accordingly, the Defendants' motion for summary judgment as to Plaintiff's Lanham Act claim will be granted insofar as it relates to the Defendants' use of the Plaintiff's name and likeness in the film, in the pictorial history book, and on the cover of the home video of "Panther." However, the Defendants' motion for summary judgment as to the Plaintiff's Lanham Act claim will be denied insofar as it relates to the Defendants' use of the Plaintiff's name and likeness on the cover of the musical CD/cassette of the film's soundtrack.

In conclusion, for the reasons stated herein, the court will grant the Defendants' motion for summary judgment as to the Plaintiff's right of publicity claim to the extent that this claim relates to the Defendants' use of the Plaintiff's name and likeness in the film "Panther," in the pictorial history book, and on the cover of the home video; however, the court will deny the Defendants' motion for summary judgment as to the Plaintiff's right of publicity claim to the extent that this claim relates to the Defendants' use of the Plaintiff's name and likeness on the cover of the musical CD/cassette soundtrack. The court will deny the Defendants' motion for summary judgment as to the Plaintiff's false light invasion of privacy claim. The court will grant the Defendants' motion for

summary judgment as to the Plaintiff's Lanham Act claim to the extent that this claim relates to the Defendants' use of the Plaintiff name and likeness in the film "Panther," in the pictorial history book, and on the cover of the home video; however, the court will deny the Defendants' motion for summary judgment as to the Plaintiff's Lanham Act claim to the extent that this claim relates to the Defendants' use of the Plaintiff's name and likeness on the cover of the musical CD/cassette soundtrack.