**Peter FANELLE and Susan Fanelle, Plaintiffs,**

v.

**LoJACK CORPORATION, Defendant.**

·No. CIV. A. 99–4292.

United States District Court, E.D. Pennsylvania.

Jan. 12, 2000.

---

Thomas Moribondo, Philadelphia, PA, Plaintiffs.

Michael J. Burns, Philadelphia, PA, for Defendant.

## MEMORANDUM

LOWELL A. REED, Jr., Senior District Judge.

Defendant LoJack Corporation has filed a motion to dismiss plaintiffs' complaint for failure to state a claim upon which relief may be granted pursuant to Fed.R.Civ.P. 12(b)(6). Upon consideration of defendant's motion (Document No. 2), plaintiffs' response (Document No. 6), and the evidence submitted therewith, the motion will be granted in part and denied in part.

## I. BACKGROUND

On Friday, July 18, 1997, a blue Lexus automobile was reported stolen in West Philadelphia. Unbeknownst to the thieves, the car was equipped with a tracking device made by defendant LoJack Corporation ("LoJack"). The tracking device led police to a garage in East Frankford, where the stolen car was discovered. Evidence gathered at that garage in turn led police to probe another group of garages. A raid of the garages on July 21, 1997, yielded 13 stolen automobiles and four arrests. Among those arrested was plaintiff Peter Fanelle ("Fanelle"). Fanelle was later found not guilty of the charges stemming from his arrest.

The *Philadelphia Inquirer* ran an article about the vehicle recoveries and arrests on July 23, 1997. The article named Fanelle as one of the four arrestees and included a "mug shot" of Fanelle. In his complaint, Fanelle alleges that in August 1998, it was "brought to (his) attention ... that promotional literature and/or a brochure prepared by agents, servants and/or employees of Lojack Corporation had been distributed in Philadelphia County and elsewhere which employed the use of the July 23, 1997 article...." (Complaint, at ¶ 10).

The brochure, entitled "LoJack Stolen Vehicle Police Recovery Network," included national and local statistics on car thefts, the above-mentioned *Philadelphia Inquirer* article in which Fanelle appears, testimonials and vignettes about car thefts and the effectiveness of the LoJack system, a reproduction of a *Business Week* magazine article about LoJack, an award certificate given to LoJack by *Consumers Digest*, and a break-down of typical costs to the victim associated with car theft. (Defendant LoJack Corporation's Motion to Dismiss Plaintiffs' Complaint Under Federal Rule of Civil Procedure 12(b)(6), Exhibit 1).

The instant action, initially filed in the Court of Common Pleas of Philadelphia County and then removed to this court pursuant to 28 U.S.C. § 1441, *et seq.*, consists of four counts. Three counts are asserted by Peter Fanelle: defamation, false light, and appropriation, and the final count appears to make three different claims on behalf of plaintiff Susan Fanelle, the wife of Peter Fanelle: loss of consortium, and intentional and negligent infliction of emotional distress. Defendant argues that plaintiffs have failed to state any claim for relief.

## II. ANALYSIS

Rule 12(b) of the Federal Rules of Civil Procedure provides that "the following defenses may at the option of the pleader be made by motion: ... (6) failure to state a claim upon which relief can be granted." In deciding a motion to dismiss under Rule 12(b)(6), a court must take all well pleaded

facts in the complaint as true and view them in the light most favorable to the plaintiff. *See Jenkins v. McKeithen*, 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969). Because the Federal Rules of Civil Procedure require only notice pleading, the complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R.Civ.P. 8(a). A motion to dismiss should be granted if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984).

Plaintiffs suggest that New Jersey law governs this action. Where no effective choice of law has been made, Pennsylvania applies a two-part choice of law analysis. *See Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 187 (3d Cir.1991). First, the court must determine whether an actual conflict exists. "Where the different laws do not produce different results, courts presume that the law of the forum state shall apply." *Financial Software Systems, Inc. v. First Union Nat'l Bank*, No. 99–623, slip op. at 6, 1999 WL 1241088 (E.D.Pa. Dec. 16, 1999) (citing *McFadden v. Burton*, 645 F.Supp. 457, 461 (E.D.Pa.1986)); *Denenberg v. American Family Corp.*, 566 F.Supp. 1242, 1251 (E.D.Pa.1983), *superseded on other grounds as explained in Miniscalco v. Gordon*, 916 F.Supp. 478, 481 (E.D.Pa.1996). If the states' laws produce different results, the court must determine whether a false conflict exists; that is, if only one jurisdiction's governmental interests would be impaired by the application of another jurisdiction's law. *See Petrokehagias v. Sky Climber, Inc.*, Nos. 96–6965, 97–3889, 1998 WL 227236, 1998 U.S. Dist. LEXIS 6746, at *10 (E.D.Pa. May 1, 1998) (citation omitted). Second, where a true conflict exists, the court must ascertain which state has the greater interest in the application of its law. *See LeJeune v. Bliss–Salem, Inc.*, 85 F.3d 1069, 1070 (3d Cir.1996) (citations omitted).

Plaintiffs do not argue that the laws of Pennsylvania and New Jersey will produce different results on any of the claims made in the complaint. *See McFadden*, 645 F.Supp. at 461. A review of the relevant law reveals that the result on any of the claims stated will not be different under Pennsylvania or New Jersey law, and thus there is no actual conflict.[1] Therefore, I will apply the law of the forum state, Pennsylvania, in analyzing plaintiffs' claims.

### A. Defamation

■ Under Pennsylvania law, a plaintiff in a defamation action has the burden of proving the following: (1) the communication was defamatory; (2) publication by the defendant; (3) the communication applies to plaintiff; (4) the recipient of the communication understands the communication's defamatory meaning; (5) the recipient understands the communication to

---

1. My analysis need not move beyond the first step in the choice of law inquiry, as there is no actual conflict between Pennsylvania law and New Jersey law on any of the major claims asserted by the plaintiffs. As plaintiffs notes, there is no substantial difference between the law of defamation in Pennsylvania and New Jersey; both rely on the *Restatement (Second) of Torts* and both define defamation similarly. *Compare MacElree v. Philadelphia Newspapers*, 544 Pa. 117, 674 A.2d 1050 (1996) (citing *Restatement* definition of defamation) *with Lynch v. New Jersey Educ. Ass'n*, 161 N.J. 152, 735 A.2d 1129, 1135–38 (1999) (same). Furthermore, both New Jersey and Pennsylvania use the *Restatement*'s definition of invasion of privacy. *See Lingar v. Live–In Companions, Inc.*, 300 N.J.Super. 22, 692 A.2d 61 (App.Div.1997); *Figured v. Paralegal Technical Serv., Inc.*, 231 N.J.Super. 251, 555 A.2d 663 (App.Div.1989); *Kiffin v. Barshak*, No. 98 4363, 1999 U.S. Dist. LEXIS 5582, * at 23 (E.D.Pa. Apr. 12, 1999) (citations omitted). Loss of consortium is recognized by both jurisdictions and a nearly identical definition and analysis is applied. *See Kibble v. Weeks Dredging & Constr. Co.*, 161 N.J. 178, 735 A.2d 1142 (1999); *Burns v. Pepsi–Cola Metropolitan Bottling Co.*, 353 Pa.Super. 571, 575, 510 A.2d 810, 812 (1986) (quoting *Leo v. Bottman*, 40 Wash.Co. 105, 108–09 (1960)).

be intended to apply to plaintiff; (6) special harm resulting to the plaintiff from its publication; and (7) abuse of a conditionally privileged occasion. *See* 42 Pa.C.S.A. § 8343; *see also Kiffin*, 1999 U.S. Dist. LEXIS 5582, * at 21–22. Defendant bears the burden of proving (1) the truth of the defamatory communication; (2) the privileged character of the publication; and (3) that the subject matter was of public concern. *See* 42 Pa.C.S.A. § 8343.

 Plaintiffs' defamation claim is sufficient to survive a motion to dismiss. The test of defamatory meaning is the effect the statement would fairly produce, or the impression that it would naturally engender, in the minds of the average persons among whom it is intended to circulate. *See Rockwell v. Allegheny Health, Educ. & Research Found.*, 19 F.Supp.2d 401, 404–05 (E.D.Pa.1998) (citing *Corabi v. Curtis Pub. Co.*, 441 Pa. 432, 273 A.2d 899, 904 (1971)). It is reasonable to infer from the complaint that the persons intended to receive the LoJack brochure were persons interested in protecting their cars from theft. The inclusion of the *Inquirer* article containing the picture and name of Peter Fanelle along with the circumstances of his arrest, in and amongst vignettes and statistics about car theft, could have given the average person interested in protecting her car from theft the impression that Peter Fanelle was a car thief or illegal chop-shop operator apprehended as a result of LoJack's tracking device. Such an impression may "harm the reputation of another as to lower him in the estimation of the community or deter third persons from associating or dealing with him." *See Beverly Enterprises,*

*Inc. v. Trump*, 182 F.3d 183, 187 (3d Cir. 1999) (quoting *MacElree v. Philadelphia Newspapers, Inc.*, 544 Pa. 117, 125, 674 A.2d 1050, 1053 (1996)). I conclude that plaintiffs have pled sufficiently to satisfy the first element.

The remaining elements are satisfied by plaintiffs' complaint as well. Plaintiffs have alleged in the complaint that the brochure was published throughout the Philadelphia area. The article included in the brochure named Fanelle, and thus the brochure applied to him. Furthermore, plaintiffs have alleged in their complaint an individual receiving the brochure could understand the defamatory meaning of the article in the context of the brochure; that is, the implication that Fanelle was guilty of crimes related to auto theft. Furthermore, a recipient could understand that the defamatory meaning was intended to apply to Fanelle, as his picture appeared in the newspaper article, and thus, the brochure.[2] Plaintiff has pled all of these facts and thus has stated a claim for defamation.[3]

 Defendant asserts as a defense the truth and accuracy of the article, and argues that the republication of an accurate and truthful newspaper article does not constitute defamation. It is well established that truth is an absolute defense to defamation. *See Schnabel v. Meredith*, 378 Pa. 609, 107 A.2d 860 (1954). While defendant's argument is compelling,[4] "the resolution of the substantial truth of defendant's [brochure] is not appropriate" on a motion to dismiss under Rule 12(b)(6) because it takes the Court beyond the pleadings. *See RRZ Public Markets, Inc. v.*

---

**2.** Plaintiff need not prove special harm, because the brochure implied that Peter Fanelle had committed a criminal offense and was therefore "slander per se," *Clemente v. Espinosa*, 749 F.Supp. 672, 677 (E.D.Pa.1990). There is no claim that the publication was privileged. Thus, the latter two statutory elements of defamation do not need to be satisfied here.

**3.** Further, plaintiffs argue that in October 1998, Peter Fanelle was found not guilty of the crimes for which he was arrested in July 1997, and because distribution of the LoJack brochure took place before the trial, LoJack could not have known whether Fanelle was guilty or not guilty when it recklessly republished the arrest article.

**4.** *See Smith v. Maldonado*, 72 Cal.App.4th 637, 85 Cal.Rptr.2d 397 (1999).

*The Bond Buyer*, No. 94–1168, 1995 WL 20838, 1995 U.S. Dist. LEXIS 604, at *8 (E.D.Pa. Jan. 17, 1995). The question on this motion is whether plaintiffs have stated a claim for defamation, and I conclude that they have. Any affirmative defenses not appearing on the face of the complaint, including the defense of truth in a defamation claim, are properly considered at another stage of the case.

## B. False Light

■ Pennsylvania recognizes actions of invasion of privacy in four varieties: intrusion upon seclusion, appropriation of name or likeness, publicity given to private life, and publicity placing a person in a false light. *See Kiffin*, 1999 U.S. Dist. LEXIS 5582, at *23; *Commonwealth v. Hayes*, 489 Pa. 419, 432–33, 414 A.2d 318, 324–25, *cert. denied*, 449 U.S. 992, 101 S.Ct. 528, 66 L.Ed.2d 289 (1980); *Restatement (Second) of Torts*, §§ 652A–652E (1977). The Superior Court of Pennsylvania has adopted the *Restatement*'s definition of the tort of publicity placing a person in a false light, which reads:

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy if
>
> (a) the false light claim in which the other was placed would be highly offensive to a reasonable person, and
>
> (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

*Restatement (Second) of Torts* § 652E (1977). Plaintiff has alleged that he was portrayed as a criminal by the inclusion in the LoJack brochure of the *Philadelphia Inquirer* article in which he was identified as an arrestee and suspect in a car theft/chop-shop investigation. Being falsely labeled a criminal could be highly offensive to a reasonable person, and therefore the first element is satisfied by plaintiffs' complaint.

Plaintiffs' false light claim also satisfies the second element. The complaint alleges that the brochure was published with reckless disregard for the truth or falsity of the impression it created of Fanelle's guilt. (*See* Complaint, at ¶ 25). Furthermore, the complaint alleges that the brochure was distributed widely, in Philadelphia and elsewhere, to such an extent that the allegedly false impression the brochure engendered could be said to have been "made public." *Restatement (Second) of Torts* § 652D.

Defendant's arguments that plaintiffs must show that Peter Fanelle was "singled out" are again questions that are not ripe for consideration on a motion to dismiss. Plaintiffs need not plead that Peter Fanelle was "singled out" by the communication;[5] they need only present a "short and clear statement of their claim," which I conclude they have done. Thus, the motion to dismiss will be denied as to Count Two.

## C. Appropriation

The law concerning the tort of appropriation is in disarray in Pennsylvania. The latest word on the subject comes from a federal court, which more than three years ago predicted that the Supreme Court of Pennsylvania would clarify the law of appropriation and the right of publicity by adopting the *Restatement (Third) of Unfair Competition*. *See Seale v. Gramercy Pictures*, 949 F.Supp. 331 (E.D.Pa.1996). This prophecy has not been fulfilled, and I am reluctant to rest a holding upon the oracular assertions of a federal judge as to the future of Pennsylvania law. As I am bound to follow the substantive law of Pennsylvania in its current state, I will

---

**5.** While plaintiffs need not *plead* they were singled out to survive defendant's motion to dismiss, plaintiffs will be required to *prove* they were singled out to prevail at trial. *See Weinstein v. Bullick*, 827 F.Supp. 1193 (E.D.Pa.1993).

apply the appropriation analysis set forth in the *Restatement (Second) of Torts,* which has been adopted by the Supreme Court of Pennsylvania. *See Marks v. Bell Telephone Co.,* 460 Pa. 73, 331 A.2d 424, 430 (1975).

Appropriation is defined this way: "One who appropriates to his own use or benefit the name or likeness of another is subject to liability to the other for invasion of his privacy." *Restatement (Second) Torts* § 652C. Appropriation is grounded in the property right of an individual in the exclusive use of his own identity; the so-called "right of publicity." *See id.,* cmt. a. The "use or benefit" at issue in an appropriation claim is typically a commercial use of one's name or likeness.

■ Plaintiffs have sufficiently stated a claim for invasion of privacy on the basis of appropriation. The complaint alleges that LoJack included in a commercial, promotional brochure a newspaper article that contained Peter Fanelle's name and photograph. The complaint further states that LoJack "use[d] Plaintiff's name and likeness to advertise [LoJack's] business product and for commercial purposes." This is sufficient to state a claim for appropriation.[6] Thus, the motion to dismiss will be denied as to Count Three.

## D. Claims of Susan Fanelle

Count IV of the complaint is woefully unclear. An extremely generous reading of the count reveals three different possible claims that plaintiffs could be asserting: loss of consortium, intentional infliction of emotional distress, and negligent infliction of emotional distress. Of these, only loss of consortium will survive defendant's motion to dismiss.

■ Loss of consortium is a valid, distinct cause of action under Pennsylvania law. *See Koenig v. Progressive Ins. Co.,*

410 Pa.Super. 232, 239 n. 6, 599 A.2d 690, 693 n. 6 (1991). It is defined as a

right growing out of the marriage relationship which the husband and wife have respectively to the society, companionship and affection of each other in their life together. As thus defined and limited, an interference with this right of consortium by the negligent injury to one spouse, should afford the other spouse a legal cause of action to recover damages for that interference.

*Burns v. Pepsi–Cola Metropolitan Bottling Co.,* 353 Pa.Super. 571, 575, 510 A.2d 810, 812 (1986) (quoting *Leo v. Bottman,* 40 Wash.Co. 105, 108–09 (Pa.1960)). Plaintiff Susan Fanelle has alleged that as a result of the injuries suffered by her husband due to LoJack's distribution of the *Philadelphia Inquirer* article in its brochure, she "has been and will be deprived of her husband's companionship, comfort, support, consortium and assistance, and all the benefits of the marital relationship." (Complaint, at ¶ 42). This is sufficient to state a claim of loss of consortium. Defendants argue that Peter Fanelle has suffered only pecuniary injuries, not personal injuries, and that his wife therefore cannot state a claim under a loss of consortium theory. *See Dugan v. Bell Telephone of Pennsylvania,* 876 F.Supp. 713, 728 (W.D.Pa.1994) (because the claim in which plaintiff alleged injuries of a personal nature rather than a pecuniary nature was legally insufficient, wife-plaintiff's loss of consortium claim was legally insufficient as well). However, here, Peter Fanelle has alleged injuries to his reputation and privacy that arise out of claims of defamation, false publicity, and appropriation, all of which are intensely personal and private actions. I have concluded that Peter Fanelle's claims are legally sufficient, and therefore, Susan Fanelle's derivative claim for loss of consortium alleged in paragraph 42 of the complaint is sufficient as well.

---

**6.** Defendant's argument that plaintiffs have failed to establish the precise commercial value of Peter Fanelle's name or likeness again

are not appropriately addressed at this stage. Plaintiffs need merely state a claim for appropriation, which they have done.

Paragraph 43 of Count IV[7] fails to state a claim of any sort. Nevertheless, I will assume for the purpose of thoroughness that plaintiffs seek to state a claim for intentional or negligent infliction of emotional distress. To state a claim for intentional infliction of emotional distress,[8] a plaintiff must plead that the defendant's conduct: (1) was intentional or reckless; (2) was extreme and outrageous; (3) actually caused the distress; and (4) caused distress that was severe. *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir. 1988), *cert. denied*, 498 U.S. 811, 111 S.Ct. 47, 112 L.Ed.2d 23 (1990); *Mulgrew v. Sears Roebuck & Co.*, 868 F.Supp. 98, 103 (E.D.Pa.1994); *Hoy v. Angelone*, 554 Pa. 134, 150–51, 720 A.2d 745, 753 (1998). In order to state a cognizable claim, the conduct must be "so extreme in nature as to go beyond all possible bounds of decency such that it would be regarded as utterly intolerable to civilized society." *Mulgrew*, 868 F.Supp. at 103. The complaint contains no allegations suggesting that LoJack's conduct was extreme and outrageous, and I conclude that under no set of facts could the reprinting of a truthful, non-defamatory newspaper article, without more, be considered utterly intolerable and beyond all bounds of decency. Thus, Susan Fanelle's apparent claim for intentional infliction of emotional distress will be dismissed.

Negligent infliction of emotional distress is a viable tort under Pennsylvania law. *See Sinn v. Burd*, 486 Pa. 146, 404 A.2d 672 (1979); *see also Green v. Bryant*, 887 F.Supp. 798 (E.D.Pa.1995). The Superior Court of Pennsylvania has held that a cause of action for negligent infliction of emotional distress exists only when: 1) a claimant contemporaneously observes physical injuries being inflicted on a close family member or 2) plaintiff nearly experiences a physical impact in that she was in the zone of danger of the defendant's tortious conduct. *See Hunger v. Grand Cent. Sanitation*, 447 Pa.Super. 575, 585, 670 A.2d 173, 178 (1996). I conclude that plaintiff Susan Fanelle has pled neither of these circumstances in the present case, and therefore the defendant's motion to dismiss for failure to state a claim will be granted as to Susan Fanelle's apparent claim for negligent infliction of emotional distress.[9]

## III. CONCLUSION

It is not the province of this Court to pass judgment on the strength of plaintiff's case on a motion to dismiss, and thus the result of a motion to dismiss is never a reliable indication of plaintiff' s likelihood

---

7. The sentence in paragraph 43 reads, "As a further result of the acts as aforesaid by Defendant, Plaintiff Susan Fanelle has suffered severe mental distress and anguish which is and may be permanent in nature." (Complaint, at ¶ 43).

8. Although the parties do not raise it in their briefs, I note that the Supreme Court has never expressly recognized an action for intentional infliction of emotional distress. *See Regan v. Township of Lower Merion*, 36 F.Supp.2d 245, 250 n. 2 (E.D.Pa.1999) (citing cases). For the purpose of analysis only, I will assume that intentional infliction of emotional distress is actionable under Pennsylvania law.

9. Nevertheless, it could be argued that the Superior Court of Pennsylvania recognizes a claim for negligent infliction of emotional dis-

tress absent the above two circumstances. *See Hunger*, 447 Pa.Super. at 595, 670 A.2d at 183; *Crivellaro v. Pennsylvania Power & Light Co.*, 341 Pa.Super. 173, 491 A.2d 207 (1985). In *Hunger*, Judge Beck observed in a concurrence that recovery may be allowed on a claim of negligent infliction of emotional distress "in a situation where a separate, preexisting duty was owed by defendant to plaintiff and breach of that duty was the cause of the emotional distress alleged." *Id.* (Beck, J., concurring) (citing *Armstrong v. Paoli Memorial Hosp.*, 430 Pa.Super. 36, 633 A.2d 605 (1993)). The duty must exist, be breached, and cause severe emotional distress that leads to bodily harm. *See id.*

Susan Fanelle does not allege that LoJack owed her a duty or breached that duty and thus her claim for negligent infliction of emotional distress will not survive defendant's motion to dismiss.

of success on the merits. This is especially true when plaintiffs face significant hurdles to marshaling the evidence necessary to survive summary judgment and to prevail before a jury on the theory that the reprinting and commercial use of an accurate newspaper article, truthful at the time it was first published, establishes liability for defamation and invasion of privacy. That said, plaintiffs' complaint is largely sufficient to survive defendant's motion to dismiss, and therefore the motion will be denied as to Counts I, II and III, and Count IV insofar as it states a claim for loss of consortium. The motion will be granted as to paragraph 43 of Count IV on plaintiffs' claims for intentional and negligent infliction of emotional distress.